**MEDICAL INSTITUTE OF MINNESOTA, a Minnesota corporation, Appellant,**

v.

**NATIONAL ASSOCIATION OF TRADE AND TECHNICAL SCHOOLS, a District of Columbia corporation, Appellee.**

No. 86–5246.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1987.

Decided May 1, 1987.

Gerald M. Singer, Minneapolis, Minn., for appellant.

John D. French, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, JOHN R. GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Medical Institute of Minnesota (MIM) appeals the order of the district court[1] granting summary judgment in favor of defendant National Association of Trade and Technical Schools (NATTS). The district court held that NATTS' decision not to reaccredit MIM did not constitute state action, was neither arbitrary nor unreasonable, and was supported by substantial evidence. On appeal MIM has forgone the argument that NATTS' conduct constitutes state action and instead now argues that NATTS' conduct is attributable to the federal government. In support of their argu-

1. The Honorable J. Earl Cudd, United States Magistrate for the District of Minnesota, acting as the trial court upon stipulation of the parties pursuant to 28 U.S.C. § 636(c).

ments, however, MIM and NATTS cite cases dealing with actions of states rather than the federal government. Application of those standards to this situation demonstrates an insufficient nexus between NATTS and the federal government. For this and the other reasons stated below, we affirm.

## I. BACKGROUND

MIM is a private technical school in Minneapolis, Minnesota, which trains students for careers as medical and dental assistants, medical laboratory technicians, and veterinary technicians. As long as MIM remains accredited by an accrediting association approved by the Department of Education (DOE), its students are eligible for federal financial aid. NATTS is the only private trade and technical school accrediting association recognized by the DOE.

In January, 1977 MIM was initially accredited by NATTS for a period of five years. In September, 1980 the school was purchased by James Daras, its current president. NATTS approved the change of ownership and granted continued accreditation. In May, 1982 MIM applied for reaccreditation. It filed a self-evaluation report and was visited by a five member investigative team from NATTS.

In October, 1982 MIM was asked to respond to nineteen problem areas found by NATTS. Following MIM's response NATTS deferred its decision because of nine areas which still needed attention. In May, 1983 MIM responded and accreditation was again deferred. This time, however, NATTS listed ten areas of concern.

In October, 1983 MIM's application for reaccreditation was officially denied because of five problem areas. MIM filed a notice of intent to appeal and a hearing was held before a three-person panel. The panel affirmed the denial of reaccreditation, finding (1) that MIM failed to demonstrate that it made refunds to students within thirty days after they terminated their enrollment; (2) that MIM failed to demonstrate, through placement statistics, that a high proportion of its graduates benefitted from their training; and (3) that

MIM failed to demonstrate that it had a sound financial structure.

MIM filed suit in the United States District Court for the District of Minnesota alleging that its constitutional rights to due process and equal protection had been denied and that NATTS acted wrongfully and negligently. The district court granted summary judgment in favor of NATTS.

## II. DISCUSSION

### A. Constitutional Violations

■ A fundamental principle of federal constitutional law is that private action, no matter how egregious, can not violate the equal protection or due process guarantees of the United States Constitution. It therefore is clear that MIM's claims of constitutional violations must fail if the actions of NATTS are not attributable to the federal government.

Several tests have been developed by the Supreme Court to determine whether there exists governmental action. MIM argues that one of the tests—the public function doctrine—compels a finding of governmental action. The public function doctrine has its origin in cases dealing with attempts to exclude blacks from voting in primary elections. In *Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), an all white primary election was struck down because the Court found that running elections is essentially a state function. A similar theme runs through other public function cases. For example, in *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), the Court held that a privately owned park could not be closed to blacks because providing mass recreation is a public function.

In support of its position MIM cites *Marjorie Webster Junior College v. Middle States Ass'n of Colleges and Secondary Schools*, 302 F.Supp. 459 (D.D.C.1969), *rev'd on other grounds*, 432 F.2d 650 (D.C. Cir.), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). In this case the court found that the functions of a private accrediting association constituted governmental action because the association acted

"in a quasi-governmental capacity by virtue of its role in the distribution of Federal funds under the 'aid to education statutes.'" *Id.* at 470. The court in *Marjorie Webster* accepted the same argument being made in the present case—that since the availability of federal funds depends on accreditation, the association is performing a public function when deciding whether to accredit.[2]

MIM argues that its students are entitled to federal financial assistance only if the school remains accredited. The DOE, therefore, has delegated to NATTS the decision whether MIM's students are eligible for federal assistance. The DOE also has regulated the procedures and criteria to be used by NATTS, MIM argues.

MIM's arguments, however, can not stand in light of two post-*Marjorie Webster* Supreme Court opinions. In *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Court found that a private nursing home's decision to transfer or discharge patients did not constitute state action even though the decision directly affected the patients' eligibility for Medicaid benefits. The Court found that although the state responded to the nursing home's actions by adjusting benefits, the state was not *responsible* for those actions. *Id.* at 1005.

In *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) the Court found no state action when a private school for maladjusted students terminated faculty members despite the fact that all the students were referrals from the public school system whose tuition was paid by the state. The Court held that the public function doctrine applies only when the functions performed are "traditionally the exclusive prerogative of the State." *Id.* at 842, 102 S.Ct. at 2772 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). In *Rendell-Baker* the Court found that educating maladjusted students was

not exclusively within the state's domain. *Id.*

■ Analyzed in light of these principles, it is clear that NATTS' decision to deny reaccreditation is not attributable to the federal government. There is little difference between this case and *Blum.* Both involve privately made decisions which affect individuals' eligibility for government benefits. As in *Blum,* NATTS is not responsible for the loss of financial aid to MIM's students. Only the DOE makes that decision.

In arguing that accreditation is an exclusive prerogative of the government, MIM equates NATTS' decision not to accredit with the DOE's decision not to provide financial assistance. MIM cites nothing showing that accreditation has been the exclusive function of the federal government. Its argument only goes to the issue of determining eligibility for federal funds. Obviously the DOE's actions are governmental action, but they are not at issue in this case. What is at issue are private actions to which the government responds. In *Blum* the Supreme Court directly confronted this argument and found it unconvincing.

MIM also argues that governmental action exists because "the procedures and criteria that NATTS can use to make accreditation decisions are specified and limited by the U.S. Department of Education regulations for nationally recognized accrediting agencies." Brief for Appellant at 14. We find this argument unpersuasive for two reasons.

■ First, the regulations promulgated by the DOE, 34 C.F.R. §§ 603.1–603.6, in no way limit or define the criteria NATTS must use when deciding whether to accredit an institution. The only criteria set forth in the regulations are those which must be met by accrediting associations in order to be recognized by the DOE.

2. This argument was expressly rejected two years earlier in *Parsons College v. North Central Ass'n of Colleges and Secondary Schools,* 271 F.Supp. 65, 70 (N.D.Ill.1967). *See also Transportation Careers v. National Home Study Council,* 646 F.Supp. 1474, 1478–79 (N.D.Ind.1986) (actions of accreditation association did not constitute governmental action).

■ Second, that the DOE regulates the procedures to be used in deciding whether to accredit is not enough to compel a finding of governmental action. "The mere fact that a business is subject to state regulation does not by itself convert its actions into that of the State for the purposes of the Fourteenth Amendment." *Jackson*, 419 U.S. at 350, 95 S.Ct. at 453.

### B. Common Law

■ Our finding that there is no governmental action does not end the matter, however. Our scope of review also allows inquiry into whether NATTS' decision to deny reaccreditation was arbitrary or unreasonable and whether it was supported by substantial evidence.[3] *See, e.g., Rockland Inst. v. Association of Indep. Colleges*, 412 F.Supp. 1015, 1016 (C.D.Cal. 1976). Although not governed by constitutional guidelines, NATTS nevertheless must conform its actions to fundamental principles of fairness. These principles are flexible and involve weighing the "nature of the controversy and the competing interests of the parties" on a case by case basis. *Marlboro Corp. v. Association of Indep. Colleges*, 556 F.2d 78, 81 (1st Cir.1977).

■ MIM argues that NATTS' decision to deny reaccreditation was arbitrary and unreasonable because it was based on vague standards. The requirements that the school have a "sound financial structure" and show that "a high proportion of its graduates benefit from the training received" allow arbitrary and discriminatory application, MIM argues. The district court found this argument unpersuasive and we agree. Great deference must be given to the standards used by NATTS. "The standards of accreditation are not guides for the layman but for professionals in the field of education. Definiteness may prove, in another view, to be arbitrariness." *Parsons College*, 271 F.Supp. at 73. Strict guidelines would strip from NATTS' officials the discretion necessary to adequately assess the multitude of variables presented by different schools.

MIM next argues that NATTS' decision was arbitrary and unreasonable because a similar school, Lakeland Academy, was granted reaccreditation by NATTS. MIM contends that the district court failed to consider evidence showing that Lakeland—although similarly situated—was treated more favorably than MIM. The evidence allegedly shows that Lakeland Academy was in worse financial condition than MIM and that Lakeland had similar placement statistics.

■ Fairness requires that Lakeland Academy and MIM be treated similarly, but only if they are similarly situated. MIM has made no showing that it was similar to Lakeland in all other relevant respects. Simply showing that Lakeland also had financial and placement problems ignores all of Lakeland's other attributes.

■ MIM also argues that it was denied a fair hearing by the appeals panel because NATTS' counsel improperly "prepped" the panel and because MIM was not allowed to cross-examine the NATTS team that conducted the investigation. MIM's improper "prepping" argument is without merit because MIM has produced no evidence that the appeals panel was biased by any discussions it may have had with NATTS' counsel. As to cross-examination, under the circumstances we find nothing unfair about denying MIM the opportunity to cross-examine the investigative team. The record reveals that MIM was given every opportunity to convince NATTS that it should be reaccredited. On two separate occasions NATTS deferred its decision, giving MIM time to correct problem areas. By the time the appeals panel heard the case MIM had submitted several responses to NATTS, detailing how it was attempting to comply with NATTS' standards. During the hearing, MIM was given the opportunity to present its case orally. Because the ultimate decision hinged on application of professional standards, a full blown adversary hearing was not required. *See, e.g., Marlboro*, 556 F.2d at 82; *Parsons College*, 271

---

3. The district court also found that NATTS' actions were reasonably related to a legitimate professional purpose. MIM does not dispute that finding.

F.Supp. at 73. Also, MIM has made no showing that the outcome of the hearing would have been different had cross-examination been allowed.

 Finally, MIM argues that the district court erred in finding that NATTS' decision to deny reaccreditation was supported by substantial evidence. The appeals panel found (1) that MIM failed to demonstrate that refunds were made to students within thirty days; (2) that MIM failed to show that a high proportion of its graduates benefitted from their training; and (3) that MIM failed to establish that it has a sound financial structure. MIM disputes each of these findings.

MIM's argument, however, seems to be not with the district court, but with the appeals panel. MIM does not argue that the evidence was insufficient. Rather, it argues that the justifications it provided for the problems should have been accepted by NATTS. For example, MIM admits that it had problems making timely refunds, but argues that the delays were caused by a computer error resulting in federal funds arriving later than anticipated. On the issue whether students benefitted from their education, MIM states that time constraints made it impossible to document placement rates that would satisfy NATTS' requirements. Finally, MIM states that its assets were low because large amounts of money were spent to correct problems found by NATTS. Also, MIM states that many of the reports upon which NATTS based its decision were made by MIM's previous owner.

MIM's arguments are self-defeating. While trying to explain why it didn't comply with NATTS' standards, MIM admits each violation. As stated previously, MIM was given every opportunity to justify its problem areas. Apparently, NATTS did not agree that MIM's problems were justified. It is neither our nor the district court's role to reweigh the evidence in this case. The district court found that appeals panel's decision was supported by substantial evidence and we agree.

 Finally, we feel obligated to correct a gross misstatement in the brief filed by NATTS. NATTS states that this case was particularly well suited for summary judgment because MIM had consented to trial without a jury. Summary judgment gave MIM the "full opportunity to present its evidence to the sole trier of fact in this case," NATTS argues. Brief for Appellee at 19. We strongly disagree. A judge does not sit as a trier of fact when deciding a motion for summary judgment even if the case is scheduled to be heard without a jury. The fact that the end result may be the same—judgment for one of the parties—is not indicative of the different roles performed by the district court in making each decision and by an appellate court in reviewing those decisions.

### III. CONCLUSION

We affirm the district court's order granting summary judgment in favor of NATTS because (1) constitutional protections are inapplicable as no governmental action exists; (2) NATTS' actions were neither arbitrary nor unreasonable; and (3) NATTS' decision was supported by substantial evidence.