WEST WASHINGTON COUNTY EMERGENCY MEDICAL SERVICES; Emery Phillips, Appellants,

v.

WASHINGTON COUNTY; Central Emergency Medical Services, Appellees.

No. 91–2998.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1992.

Decided June 30, 1992.

Gregory Karber, Fort Smith, Ark., argued, for appellants.

Michael R. Rainwater, Little Rock, Ark., argued (Don Taylor and Wm. Jackson Butt, II, Fayetteville, Ark., on the brief), for appellees.

Before BOWMAN, WOLLMAN, and BEAM, Circuit Judges.

BOWMAN, Circuit Judge.

West Washington County Emergency Medical Services (WWCEMS) and Emery Phillips [1] appeal from the order of the District Court [2] granting summary judgment on their 42 U.S.C. § 1983 (1988) action [3] in favor of Washington County and Central Emergency Medical Services (CEMS). We affirm.

CEMS and WWCEMS provide emergency medical services (EMS) in Washington County, Arkansas. From 1982 until 1988, both had contracts with Washington County pursuant to which they provided EMS in different geographic areas of the county. Their compensation was based upon the size of the populations each served and was raised through a county sales tax. These contracts were terminable upon ninety days notice.

In October 1988, after giving ninety days written notice, the county terminated its contract with WWCEMS. It then contracted with CEMS to provide EMS in the area formerly served by WWCEMS (hereinafter West Washington County) in addition to CEMS's original service area (hereinafter East Washington County). Accordingly it paid CEMS all the tax money earmarked for EMS in those areas. At about this same time the county began operation of a 911 emergency telephone system. Initially, all emergency calls were routed to CEMS. Currently, however, calls are routed to WWCEMS if the caller volunteers a preference for WWCEMS.

WWCEMS initiated this action in March 1991, alleging that the appellees were depriving it of its Fourteenth Amendment due process and equal protection rights by denying it county funds and access to the 911 system, competing with it unlawfully, attempting to deprive it of its assets, and conspiring to do the above. [4] It also alleged that the appellees were violating federal antitrust laws as well as several Arkansas statutes. The appellees filed motions for summary judgment. The District Court granted these motions on the federal issues and dismissed the pendent state claims. WWCEMS appeals.

"We review a grant of summary judgment de novo," *United States ex. rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992), and will affirm only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

**1.** To simplify our discussion, we refer to the appellants jointly as WWCEMS. *See West Washington County Emergency Medical Services v. Washington County*, No. 90–5113, slip op. at 1 n. 1, 1991 WL 349617 (W.D.Ark. Aug. 6, 1991) (Memorandum Opinion), *reprinted in* Joint Appendix at 382 n. 1.

**2.** The Honorable H. Franklin Waters, Chief United States District Judge for the Western District of Arkansas.

**3.** The appellants also raised an antitrust claim in District Court but do not appeal from the grant of summary judgment with respect to that claim.

**4.** It is by virtue of its conspiracy allegations that WWCEMS implicates CEMS in its due process and equal protection claims.

judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard is satisfied here.

WWCEMS's primary argument on appeal is that the appellees are denying it due process by providing EMS in West Washington County without first complying with certain procedures required by Arkansas statutes. According to WWCEMS, Arkansas law requires that the appellees clear certain procedural hurdles before they may provide EMS in West Washington County. WWCEMS contends that, unless and until the appellees comply with these requirements, WWCEMS is the only authorized EMS provider in West Washington County and it, therefore, is entitled under Arkansas law to all the 911 business originating in the area, all county funds allocated for the area's EMS, and all the EMS business in the area free of subsidized county competition. WWCEMS concludes that the appellees are impairing its interests in these benefits, and therefore denying it due process, by providing EMS in West Washington County in violation of Arkansas law. We disagree.

■ Where liberty interests are not implicated, a procedural due process claim can survive summary judgment only if it is based upon a property interest encompassed by the Fourteenth Amendment. *See Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Moreover, whether a particular interest amounts to a Fourteenth Amendment property interest turns upon whether the claimant has "a legitimate claim of entitlement to it," *id.* at 577, 92 S.Ct. at 2709, under "existing rules or understandings that stem from [a] source such as state law." *Id.* In this case, the interests that WWCEMS claims the appellees are impairing arise not from statutory restrictions on the appellees' access to the West Washington County market, but rather from WWCEMS's lack of competition in that market. As WWCEMS does not main-

tain that it is entitled to this lack of competition, it follows that WWCEMS has no constitutionally protected property interest in the benefits arising therefrom. Accordingly, the District Court properly granted summary judgment on this claim.

■ WWCEMS next contends that the appellees violated its due process rights by conspiring to force it into dissolution and thereby deprive it of its "physical assets." Appellant's Brief at 9. WWCEMS, however, has not dissolved, and the only alleged assets it has been denied are the benefits attributable to its lack of competition,[5] the denial of which we already have held does not violate due process. Summary judgment, therefore, was appropriate on this point as well.

■ WWCEMS also contends that the appellees denied it equal protection of the law by permitting initially only CEMS to respond to 911 calls in West Washington County despite the fact that certain Arkansas statutes allegedly restrict CEMS's authority to provide EMS there. However, "[a]bsent a suspect classification or the infringement of a fundamental right, neither of which is alleged to exist here, the equal protection clause is offended only if the [state's] different treatment of ... two classes ... bears no rational relationship to [any] legitimate governmental purpose." *Bunyan v. Camacho*, 770 F.2d 773, 774 (9th Cir.1985), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).

In this case, the initial decision to have CEMS, but not WWCEMS, respond to the 911 calls was or could have been based upon the fact that, at the inception of the 911 system, only CEMS was paramedic level certified. As the county had a legitimate interest in the quality of emergency medical care available to its citizens, *see, e.g.,* Ark.Code Ann. § 12–10–302(e)(2)–(3) (Michie 1987) (authorizing and encouraging Arkansas's political subdivisions to implement the 911 system), this decision clearly did not violate the equal protection clause.

---

5. WWCEMS specifically argues that the conspiracy to deprive it of its physical assets resulted in an injury to WWCEMS in the form of reduced market share. *See* Appellant's Reply Brief at 5.

WWCEMS's original market share, however, clearly was the product of its lack of competition.

WWCEMS also contends that after it was certified paramedic level the appellees denied it equal protection of the law by delaying its access to the 911 system and by denying it the same access granted to CEMS. These arguments are meritless. WWCEMS's subsequent acquisition of paramedic level certification could not render unconstitutional the county's initially constitutional decision to have CEMS respond to its 911 calls. Moreover, as there can be no equal protection violation without state action, *see, e.g., Medical Inst. v. National Ass'n of Trade and Technical Sch.,* 817 F.2d 1310, 1312 (8th Cir.1987), WWCEMS's equal protection rights could have been violated after it became certified paramedic level only if the county reconsidered or was required to reconsider its arrangements with CEMS. Assuming *arguendo* that such reconsideration was necessary, the county still could have decided to limit full 911 access to only one emergency medical care provider so that that provider would handle a maximum number of emergency cases and thereby develop the highest level of skill for responding to them. *See, e.g.,* Joint Appendix at 309, 311 (proposed Criteria for Emergency Medical Services) (naming a single EMS provider would "[m]aximize the level of patient care by ensuring regular access to emergency patients"). Likewise, the county's decision to have CEMS, rather that WWCEMS, serve as its primary 911 EMS provider could have been based upon CEMS's greater actual experience providing paramedic level service. Thus, to the extent the county distinguished between CEMS and WWCEMS after WWCEMS was paramedic level certified, its bases for doing so were rationally related to its legitimate interest in the level of emergency health care available to its citizens.

For the reasons set forth above, the District Court's grant of summary judgment is affirmed.