**PEORIA SCHOOL OF BUSINESS, INC., Plaintiff,**

**v.**

**ACCREDITING COUNCIL FOR CONTINUING EDUCATION AND TRAINING, a Virginia Corporation, Defendant.**

No. 92–CV–5793.

United States District Court, N.D. Illinois, E.D.

Oct. 30, 1992.

---

Robert J. Napleton, Motherway & Glenn, Chicago, Ill., for plaintiff.

Michael T. Hannafan, William E. Blais, Michael T. Hannafan & Associates, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Peoria School of Business, Inc. ("Peoria") brings this action to enjoin Accrediting Council for Continuing Education and Training ("ACCET") from enforcing its decision to withdraw the accreditation of Peoria—a decision which Peoria contends violates its Fifth Amendment right to due process as well as common-law principles of fundamental fairness. ACCET now moves to dismiss Peoria's complaint pursu-

ant to Fed.R.Civ.P. 12(b)(6) and, for the reasons set forth below, we grant the motion.

## I. Background

Peoria alleges the following facts in its complaint which, along with all reasonable inferences therefrom, we take as true for the purposes of the current motion. *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). Peoria, an Illinois corporation, is licensed as a vocational school by the Illinois Department of Education. ACCET, a nonprofit corporation organized under the laws of Virginia, is a voluntary association of educational institutions associated for the improvement of adult continuing education and training. ACCET is recognized by the United States Department of Education as a national accrediting agency. *See* 34 C.F.R. § 602 *et seq.* To aid in the process of accreditation and in compliance with the criteria of the Department of Education, ACCET has promulgated (1) Policies and Practices of the Accrediting Commission, (2) Standards for Accreditation, and (3) Policy and Procedure for Processing Complaints about Members Institutions.

In April, 1991, ACCET accredited Peoria for a period of five years. After receiving complaints about Peoria, by letter dated January 2, 1992, ACCET directed Peoria to show cause why its accreditation should not be withdrawn. Following an on-site examination of Peoria, conducted pursuant to ACCET's "show cause" procedures, on April 21, 1992, ACCET withdrew the accreditation granted to Peoria in April, 1991. The purported basis of ACCET's action was that Peoria did not comply with standard III–A, which provides:

*Stability:* The applicant shows a record of responsible financial management with income sufficient to maintain a continuing program of high quality, and to complete the instruction of all enrollees. Adequate financial planning and budgeting exists.

*Interpretation of Standard:* The applicant demonstrates responsible financial management with income sufficient to

maintain a continuing program of high quality and to complete the instruction of all enrollees. Financial records were reviewed. Specific clear breakdowns demonstrate a current assets to current liabilities ratio of at least 1:1. Major expenditures and major sources of income are clearly evaluated and reviewed.

Peoria appealed this determination in accordance with procedure established by ACCET. On July 21, 1992, finding that Peoria had submitted sufficient evidence to warrant reconsideration, the appeals panel remanded the matter to the accrediting commission. Nonetheless, the accrediting commission reaffirmed its decision to withdraw accreditation. The decision became final upon communication to Peoria by letter dated July 30, 1992.

Peoria filed suit in the Circuit Court of Cook County, alleging that ACCET's determination was made in violation of Peoria's Fifth Amendment right to due process and of common-law principles of fundamental fairness. Specifically, Peoria contended (1) that the decision was based on vague and subjective standards for accreditation, (2) that ACCET's determination was premised on erroneous factual conclusions, and (3) that the withdrawal was tainted by ex parte participation in the appeals process by the United States Department of Education. Peoria's claim brought in part under the Fifth Amendment of the United States Constitution and given the diversity of citizenship between the parties, ACCET removed the action to this court.

## II. Discussion

There is no doubt that the loss of its accreditation will work substantial financial harm to Peoria. The initial question, however, is whether that harm gives rise to a constitutional deprivation. We conclude that it does not.

Framed as a violation of due process, Peoria is met with the burden of attributing ACCET's action to that of the federal government. *See LaBoy v. Zuley*, 747 F.Supp. 1284, 1286 (N.D.Ill.1990) (due process clause of the Fifth Amendment applies only to action by the federal government and federal officials). We begin by

noting that the fact that an entity is subject to extensive and detailed regulation (as is ACCET) does not alone render its actions attributable to the government. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). Rather, "the inquiry must be whether there is a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [government] itself." *Id.* at 351, 95 S.Ct. at 453. A nexus between ACCET's actions and the federal government sufficient to bring such conduct under the scope of the Fifth Amendment may be established by (1) showing that government exercised such coercive power or such significant encouragement that it is responsible for the specific private conduct challenged, or (2) that the private entity has exercised powers that are traditionally the exclusive prerogative of the government. *See Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982).

■ Peoria's bid for Fifth Amendment protection rests on its contention that ACCET, although a private association, performed the "exclusively public function of accreditation." Peoria's Brief in Opposition to ACCET's Motion to Dismiss at 6. The issue of whether accreditation is a power traditionally the exclusive prerogative of the government, thus providing a sufficient nexus between the accrediting body and the federal government, was addressed by this court in *Parsons College v. North Central Ass'n of Colleges and Secondary Sch.,* 271 F.Supp. 65, 70 (N.D.Ill. 1967):

> Invoking a claim of due process, the College draws no support from the commands of the federal Constitution, as contained either in the Fifth Amendment or the Fourteenth Amendment. By their terms, these constitutional guarantees control only the action of government. Designed to guard the individual against the overweening power of the state, they do not control the voluntary arrangements or relations of private citizens in their private dealings with each other.

> Here there is no suggestion that the Association is an arm of government, making its acts the action of the state. With a corporate charter granted under general law, the Association stands on the same footing as any private corporation organized for profit or not. The fact that the acts of the Association in granting or denying accreditation may have some effect under governmental programs of assistance to students or colleges does not subject it to the constitutional limits applicable to government, any more than a private employer whose decision to hire or fire may affect the employee's eligibility for governmental unemployment compensation. The termination of membership in a private association, organized to maintain the standards in a profession or calling, do not, therefore, present a federal question.

*See also National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.,* 779 F.2d 1281, 1284 n. 6 (7th Cir.1985) (citing *Parsons College*); *Transport Careers, Inc. v. National Home Study Council,* 646 F.Supp. 1474, 1478 (N.D.Ind.1986). Like the association in *Parsons College,* ACCET is a private corporation acting independently from the government. That its decision may deprive Peoria students of governmental financial assistance is insufficient in itself to subject ACCET's actions to the rigors of the Fifth Amendment. *Parsons College,* 271 F.Supp. at 70; *see also Medical Inst. of Minnesota v. National Ass'n of Trade and Technical Sch.,* 817 F.2d 1310, 1313 (8th Cir.1987). Moreover, that the procedures and criteria used by ACCET in its accreditation determinations are specified and limited by the Department of Education regulations for nationally recognized accrediting agencies, is likewise insufficient to attribute ACCET's actions to the federal government. *See Medical Inst. of Minnesota,* 817 F.2d at 1313–14 (citing *Jackson,* 419 U.S. at 350, 95 S.Ct. at 453). Peoria has not cited, and we have not found, any persuasive authority to conclude that ACCET's accreditation function constitutes

state action for purposes of the Fifth Amendment.

 In that the United States Constitution does not govern this cause, we are left to examine ACCET's actions in light of applicable common-law principles. Given a showing of economic necessity, federal review of the actions of a voluntary association with respect to its members is limited to consideration of whether the decisions are "arbitrary and unreasonable" and whether they are supported by "substantial evidence." *See Wilfred Academy of Hair and Beauty Culture v. Southern Ass'n of Colleges and Sch.*, 957 F.2d 210, 214 (5th Cir.1992); *Medical Inst. of Minnesota*, 817 F.2d at 1314; *F.T.L. Marketing Corp.*, 779 F.2d at 1284–85. While both Peoria and ACCET agree that Virginia law should govern the present inquiry, Virginia law does not differ significantly from the above stated rule. *See Gottlieb v. Economy Stores, Inc.*, 199 Va. 848, 102 S.E.2d 345, 352 (1958):

> In reviewing an action expelling a member of a corporation, [courts] may inquire whether the member was given reasonable notice of the hearing and the charge against him, whether he was afforded an opportunity to be heard, and whether the hearing and expulsion were in good faith. In cases where the evidence is conflicting, the action of the corporation is conclusive, if it is in accordance with the law and the powers conferred upon the corporation. When there is evidence tending to support the conclusion, the courts will not interfere with the merits of the decision.

At the threshold, we note that inquiry into the association's action is properly left for consideration on a motion for summary judgment, and not on a motion to dismiss. Recognizing the limited scope of review associated with a motion to dismiss, ACCET urges this court to treat the present motion as one for summary judgment. Indeed, as both sides have presented and relied upon matters outside the pleadings, this court will proceed to examine the withdrawal of Peoria's accreditation as if brought in the context of a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b); *McQueen v. Shelby County*, 730 F.Supp. 1449, 1451 (C.D.Ill. 1990).

 Determining if the association's action with respect to Peoria was "arbitrary and unreasonable" is essentially a question of whether "the accrediting body's internal rules provide a fair and impartial procedure and whether it has followed its rules in reaching its decision." *Wilfred Academy*, 957 F.2d at 214. This is necessarily an inquiry of deference, as the "standards of accreditation are not guides for the layman but for professionals in the field of education." *Parsons College*, 271 F.Supp. at 73. After a careful and thorough review of the submissions of the parties, it is abundantly clear that ACCET's decision to withdraw Peoria's accreditation was not "arbitrary and unreasonable." ACCET afforded Peoria with prior written notice regarding the concerns over its financial stature. Additionally, Peoria was given the opportunity to respond in writing to the report generated as a result of ACCET's on-site inspection of Peoria. In the face of adverse action, Peoria was granted an appeal, during which Peoria was able to submit a written brief detailing its position. Far from conducting a "sham hearing," the appeal board considered Peoria's evidence and decided to remand the matter for reconsideration. That Peoria did not ultimately prevail is insufficient to present a genuine issue of material fact indicating that ACCET's determination was "arbitrary and unreasonable."

Likewise, we find that ACCET's conclusion that Peoria did not satisfy Standard III–A—a standard sufficiently definite to guide professionals in the field of accreditation—is supported by "substantial evidence." Although Peoria cites a total assets to total liabilities ratio of 6:1 as of December 31, 1991, it is also apparent that Peoria's financial position had substantially deteriorated between the close of the 1990 fiscal year and the close of the 1991 fiscal year. There is evidence that Peoria's gross revenue in 1990 was $64,989, translating to

a net profit of $11,411. In 1991, however, Peoria's gross revenue had decreased to $19,827, and the school suffered a loss of $47,309. Peoria acknowledges that the deficit resulted from the loss of a substantial "Last Chance" contract. These facts certainly provide "substantial evidence" to support ACCET's conclusion that Peoria no longer had "sufficient income to maintain a continuing program of high quality and to complete the instruction of all enrollees." Accordingly, ACCET's determination, withdrawing Peoria's accreditation, does not violate principles of fundamental fairness as defined by common law.

### III. Conclusion

Finding no governmental action on the part of ACCET, we dismiss Peoria's claim brought pursuant to the Fifth Amendment of the United States Constitution. Additionally, we review Peoria's common-law claim as if brought under Fed.R.Civ.P. 56 and, concluding that the withdrawal of Peoria's accreditation was not "arbitrary and unreasonable" and was supported by "substantial evidence," grant summary judgment in favor of ACCET.[1] It is so ordered.

---

1. Consequently, we deny as moot Peoria's motion for a temporary restraining order.