[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11088
_____

D.C. Docket No. 1:16-cv-03503-TWT

THE PAINE COLLEGE,

                                                Plaintiff-Appellant,

versus

THE SOUTHERN ASSOCIATION OF COLLEGES AND
SCHOOLS COMMISSION ON COLLEGES, INC.,

                                                Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 16, 2020)

Before WILSON and BRANCH, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

The Paine College ("Paine"), a private college in Georgia, appeals from a grant of summary judgment to the Southern Association of College and Schools' ("SACS") sub-unit, the Commission on Colleges, Inc. ("the Commission"). The college initially brought suit against the Commission after the Commission revoked Paine's SACS accreditation. Paine alleges that summary judgment was inappropriate because the record revealed that the Commission failed to follow procedural rules in evaluating Paine's status such that the college's common law due process rights were infringed. After a review of the record, and with the benefit of oral argument, we affirm.

## I. Background

Paine is a private, co-educational, liberal arts college located in Augusta, Georgia. "SACS. . . is one of six regional educational accrediting associations, recognized by the Department of Education. . . . Accreditation by a recognized accrediting agency, such as SACS, is a prerequisite for an institution's students to receive federal financial assistance." *Wilfred Acad. of Hair & Beauty Culture,*

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

2

*Hous., Tex. v. S. Ass'n of Colls. & Schs.*, 957 F.2d 210, 212 (5th Cir. 1992).[1]  The

Commission is one of four "specialized commissions" within SACS which "set

educational standards and make accreditation decisions." *Id.*  Paine College was

first accredited by a predecessor of the Commission in 1931 and has been

continuously accredited since then.

To gain or maintain accreditation with SACS, an institution must comply

with the standards contained in the Principles of Accreditation ("the Principles"),

which broadly set forth requirements in four areas: (1) institutional mission,

governance, and effectiveness; (2) programs; (3) resources; and (4) institutional

responsibility for Commission policies.  As part of the accreditation review,

member institutions submit documentation demonstrating compliance with the

Principles to a committee particular to each institution that oversees the review

process.  The committee reviewing member compliance, a review committee, then

makes a determination regarding that institution's status.  If a review committee

finds that an institution is not in compliance with the Principles, the review

committee makes a recommendation of action to the Executive Council, which

---

[1] Accreditation is a prerequisite to federal funding because "[t]he Secretary recognizes accrediting agencies to ensure that these agencies are, for the purposes of the Higher Education Act of 1965 . . . reliable authorities regarding the quality of education or training offered by the institutions or programs they accredit."  34 C.F.R. § 602.1(a); *see also* 34 C.F.R. § 602.10. These accrediting bodies rate both the educational success of institutions and certain business aspects, such as the school's "fiscal and administrative capacity as appropriate to the specified scale of operations."  20 U.S.C. § 1099b(a)(5)(E).

votes to pass that recommendation on to the full Board.  The Board can then place the institution on "Warning," a sanction that places the institution on a monitoring period that can last, at most, two consecutive years.  If the institution fails to show compliance with the Principles after two years on Warning, the institution may be removed from membership.  If the institution fails to show compliance but shows good cause for why it is not in compliance after the Warning period, the Board can place it on Probation.  The maximum consecutive time that an institution may be on Probation is two years.  As a result, if an institution has been on Warning for two years followed by Probation for two years, it must either demonstrate full compliance with the Principles at the final review of the review committee or be removed from the Commission's membership.

Paine had serious financial problems beginning around 2011.  These issues culminated in 2014, when Paine had a $10 million budget shortfall.  On April 24, 2012, after adverse media attention regarding Paine's alleged financial mismanagement, the Commission's vice president requested that Paine prepare a report documenting its compliance with the Principles' requirements relating to financial stability and control of resources.   After a review of Paine's report, the Board voted to place Paine on Warning in June of 2012.  A special committee, assigned specifically to track Paine's financial progress, visited the school in 2013

to re-evaluate the institution and informed Paine that it needed to demonstrate compliance with the Principles or face removal from membership.

The special committee visited Paine each year from 2013 to 2016. After each visit, the special committee drafted a report and provided Paine with a copy of the report. The Commission's rules gave Paine the opportunity to correct any factual errors in the special committee report and provide written responses and documents addressing the issues listed in the report to the Commission. Each year, Paine provided such a response, including hundreds of pages of documents. Each year the review committee found that Paine failed to comply with the Principles. And each year, the Executive Council and Board of Trustees agreed with the review committee and adopted their recommendations concerning the finding of noncompliance. Paine progressed from two years of Warning to two years on Probation without being able to comply with the Principles.

In 2016, a special committee visited Paine from March 29 through March 31, 2016. After the special committee submitted its report, the review committee conducted an interview with a Paine delegation to make a final determination. The review committee found Paine was still not in compliance with the Principles. The Executive Council and the Board affirmed that determination. Since Paine had been on Probation for the maximum time period and therefore could no longer be continued on Probation, the Executive Council and the Board of Trustees

5

unanimously voted to remove Paine from membership—in effect, revoking its accreditation.

On July 7, 2016, Paine formally appealed the Board's decision revoking Paine's accreditation. Commission appeals are governed by the Appeals Procedures of the College Delegate Assembly (the "Appeals Procedures") and by 20 U.S.C. § 1099b(a)(6). The Appeals Committee consists of twelve individuals elected by the College Delegate Assembly. The procedures provide that an appeal can be decided by a quorum of five or more members of the Appeals Committee. The Chair of the Board must fill vacancies on the Appeals Committee—for example, if a member has a conflict of interest or a quorum cannot be established—with members appointed to the appeals committee for the purpose of that appeal. The Appeals Procedures also have specific rules about conflicts of interest. Among other conflicts, the procedures state that anyone who voted on the "accreditation status" of the institution "at any time leading to the appealable decision" has a conflict.

Carol Luthman, an administrative employee of SACS COC, carried out several tasks on behalf of the Board relating to the appeal.[2] Luthman performed an

---

[2] The record shows that Luthman served as the coordinator for the appeals process compiled the administrative record for the appeal, informed Paine when the rescheduled hearing would take place, [provided Paine with a list of the members who would serve on the appeals committee, invited the members of the committee to serve, and trained the hearing officer and committee chair on the relevant rules and procedures—all normal parts of her job description.

initial conflict check and determined that five of the twelve elected Appeals Committee members had a conflict. And although another member—Dr. Luckey—participated in votes to place Paine on Warning in 2012 and 2013, Luthman ultimately concluded that he did not have a conflict. Luthman also sent the emails which invited two non-elected members to the Appeals Committee after the Chair of the Board confirmed their appointment.

The Appeals Committee, after a hearing during which Paine presented evidence of its improved financial state, unanimously affirmed the Board's decision to revoke Paine's accreditation. A week later, Paine filed this lawsuit, challenging the revocation of its accreditation. Paine asserted claims for violations of common law due process based on alleged irregularities in Paine's appeal process and other state law claims.

Following discovery, Paine filed for partial summary judgment and the Commission filed for summary judgment. The district court granted the Commission's motion for summary judgment and denied Paine's motion for partial summary judgment. In brief, the court found that the review process was "fundamentally fair." The court also concluded that substantial evidence supported the Committee's ruling, even allowing for some evidence that pointed against it. And, regarding the arguable procedural violations that Paine challenged, the

7

district court found they did not affect the fundamental fairness of the process.

This appeal followed.

## II. Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the non-moving party." *Arrington v. Helms*, 438 F.3d 1336, 1341 (11th Cir. 2006).

## III. Discussion

A threshold question to reviewing Paine's challenge to the appeals procedure is whether this court recognizes the legal right they claim: a common law due process right. Our circuit, in the only reported case on this issue, declined to decide whether such a right existed. *See Hiwassee Coll., Inc. v. S. Ass'n of Colls. & Schs.*, 531 F.3d 1333, 1335 (11th Cir. 2008) (per curiam). Instead, the *Hiwassee* court borrowed the standard of review from a Sixth Circuit case[3] that recognized such a right and concluded that, even assuming such a right existed, SACS complied with any such common law due process requirements. *See id.* at 1335 & n.4 ("The procedural components of Hiwassee's argument fail to show a

---

[3] *See Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006) ("This Court reviews only whether the decision of an accrediting agency . . . is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence.") (citations omitted).

violation of common law due process, or that SACS's decision to terminate

Hiwassee from membership based on its continuous troubled financial condition

was arbitrary and capricious.").  We follow suit today and hold, without deciding

whether such a right exists, that the process used to remove Paine's accreditation

would not offend common law due process.

In reaching this conclusion, we apply the same deferential standard the

*Hiwassee* court utilized "and review 'only whether the decision of an accrediting

agency . . . is arbitrary and unreasonable or an abuse of discretion and whether the

decision is based on substantial evidence.'"  *Id.* at 1335 n.4 (quoting *Thomas M.*

*Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)).  As the

*Cooley* court explained, the real question, under this standard of review, is whether

the process and decision were fundamentally fair:

> [G]reat deference should be afforded the substantive rules of these
> [accreditation] bodies and courts should focus on whether an
> accrediting agency such as the ABA followed a fair procedure in
> reaching its conclusions.  We are not free to conduct a *de novo* review
> or substitute our judgment for that of the ABA or its Council.  Rather,
> in analyzing whether the ABA abused its discretion or reached a
> decision that was arbitrary or unreasonable, we focus on whether the
> agency "conform[ed] its actions to fundamental principles of
> fairness."

*Cooley*, 459 F.3d at 713 (second alteration in original) (quoting *Med. Inst. of Minn.*

*v. Nat'l Ass'n of Trade & Tech. Schs.*, 817 F.2d 1310, 1314 (8th Cir. 1987)).  Thus,

we examine whether the *process* was "arbitrary and unreasonable or an abuse of

discretion" and whether the *decision* was made with "sufficient reasoning." *Id.* at 712, 715.

A. Whether the Commission's Process Was Arbitrary and Unreasonable or an Abuse of Discretion

A review of the record shows that due process is more than satisfied when looking at the procedures used to revoke Paine's accreditation. The Commission has detailed rules and procedures for evaluating an institution's accreditation status. The review committees are comprised of professionals and peers who evaluate every document the institution provides. The institution is measured against objective standards detailed in the Principles. Moreover, the review committee's initial recommendation is further reviewed by two bodies: the Executive Council and the Board of Trustees, both of which are comprised of members elected from the body of member institutions as a whole. The appeals process itself has an entirely separate hearing, a new set of judges who have served in the academic accreditation field before, and gives yet another opportunity for an institution to present its evidence and argument. These procedures are fundamentally fair. Another way to put it: "The Commission's procedures treat applicants for accreditation like capable professionals seeking the evaluation and recognition of their peers: we do not think that due process requires any more." *Marlboro Corp. v. Ass'n of Indep. Colls. & Schs., Inc.*, 556 F.2d 78, 82 (1st Cir. 1977).

10

Paine nonetheless contends that two minor errors in the selection of the appeals committee deprived the process of fundamental fairness such that due process was offended. First, says Paine, one of the Appeals Committee members—Dr. Luckey—should not have served on Paine's appeal because he had a conflict of interest from having voted to place Paine on Warning a few years prior. Second, Paine argues the Committee jumped the gun, so to speak, in inviting two unelected members—Drs. Martin and Early—to serve on the Appeals Committee before all elected members had been contacted to determine if a quorum existed. For the purposes of this appeal, we assume that these were errors under the Appeals Procedures. Nevertheless, we do not find that Paine's due process rights were violated.[4]

First, a conflict of interest is not a *per se* due process violation. We have held, in the context of a due process claim regarding a government decision to deny benefits, that "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle v. Liberty Life Assurance Co. of Bos*., 542 F.3d 1352, 1360 (11th Cir. 2008). And the Supreme

---

[4] We note that *Cooley* held similar allegations of procedural violations did not rise to a denial of due process: "The other errors alleged by Cooley—a conflict of interest by one Committee member and the use of an incorrect fact sheet during one of the hearings—do not amount to a due process violation." *Cooley*, 459 F.3d at 715.

11

Court has noted that "[p]ersonal bias or prejudice" is not enough, on its own, to trigger the common law concept of a violation of due process. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876–77 (2009).  Thus, even an admitted conflict of interest does not automatically invalidate a decision.[5]

The same is true for the appointment of the two unelected members of the Appeals Committee.[6]  Even if the rules did not permit these appointments, it is hard to see how Paine was harmed at all, let alone to such an extent that due

---

[5] Paine relies on a Supreme Court case that interpreted constitutional due process requirements in the death penalty context to argue that a conflict of interest is *per se* error.  In *Williams v. Pennsylvania*, the Supreme Court held that "under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case."  136 S. Ct. 1899, 1905 (2016) (vacating denial of postconviction relief because state justice who participated in decision to deny relief had been the district attorney who approved decision to seek the death penalty in defendant's case).  The Court reasoned that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Id*. at 1905.  This case does not carry Paine's argument.  Not only is the context radically different, but the Court in *Williams* was also considering the "potential for [actual] bias" in the determination of the adverse outcome, not merely a conflict of interest.  Here, Paine has not shown any potential for actual bias.

[6] As noted earlier, we are assuming for the purposes of this appeal that the appointments of the two unelected members of the Appeals Committee were erroneous.  However, we note that the record revealed that the Appeals Procedures state there must be a "minimum" of five members to constitute a quorum.  If a quorum cannot be reached from the 12 elected members, the Chair of the Board is allowed to appoint other qualified academic employees from member institutions.  Of the 12 elected members, five of them had conflicts of interest.  Another had moved out of the country and retired.  Another was unable to make the committee because his of CPA obligations and an upcoming tax filing deadline.  Another could not serve because of a board meeting.  That left only four elected members who could serve.  It is a practice of the Commission to have available at least six members who can serve in case one gets sick last minute, and this reasonable precaution is not expressly prohibited by any of the rules.  Thus, the Chair of the Board was permitted to appoint other members to the committee to ensure a quorum, which she did.  In light of these circumstances, it is doubtful that the invitation to these two members was, in fact, a procedural error.

process was violated.  Paine makes a passing argument that one of the unelected members influenced the Appeals Committee's choice to include certain language in the letter sent to Paine after the hearing.  But even if this committee member advocated against Paine's interest, that advocacy is insufficient to show a violation of due process because (a) a quorum requires five members, so even if one member of the six-member committee was extraneous, at least one new member was required,  (b) the decision was unanimous, meaning regardless of which of the two unelected members had served, the vote would have been in favor of affirming the removal of Paine's accreditation, and (c) Paine put forward no evidence to show that any elected members were actually available to serve in either of the unelected member's places.

In short, minor departures from an outlined procedure do not *per se* cause injury and therefore would not amount to a violation of procedural due process. Given the lengthy process the Committee utilized before the appeal even happened and given that Paine has not produced any evidence to suggest these errors had an effect on the ultimate decision, Paine has not demonstrated that it was denied due process.

B.  Whether the Commission's Decision was Based on Substantial Evidence

This prong of the due process test requires little discussion.  Paine argues that the Commission's decision to allow this particular Appeals Committee to hear

13

Paine's appeal was not based on substantial evidence. But Paine misses the thrust of the analysis: the question is whether the Commission's *ultimate decision* was based on substantial evidence. *See Cooley*, 459 F.3d at 712, 715. And to that question, the record shows that there was more than substantial evidence, over a period of four years, to make the decision that the Committee made.

### IV. Conclusion

Because Paine has not shown that any technical errors in the appeals process rendered the loss of accreditation procedure as a whole arbitrary and unreasonable or an abuse of discretion, and because the Committee's decision to remove Paine from SACS accreditation was based on substantial evidence, we affirm the grant of summary judgment in the Committee's favor.[7]

**AFFIRMED.**

---

[7] Paine also argues that the district court erroneously required Paine to demonstrate an injury in addition to the injury of the alleged due process violations. Because we hold that there was no due process violation, thus necessarily holding there was no injury at all, we need not reach this additional argument.