**FOUNDATION FOR INTERIOR DESIGN EDUCATION RE-SEARCH, Plaintiff,**

**v.**

**SAVANNAH COLLEGE OF ART AND DESIGN, Defendant.**

**No. 1:98–CV–346.**

United States District Court,
W.D. Michigan,
Southern Division.

Dec. 21, 1998.

Douglas W. Van Essen, Bruce Anthony Courtade, Law, Weathers & Richardson, Grand Rapids, MI, for Foundation for Interior Design Education Research, a non-profit charitable organization, plaintiff.

David L. Harrison, Tolley, Vanden-Bosch, Walton, Korolewicz, et al., Grand Rapids, MI, for Savannah College of Art and Design, a Georgia non-profit corporation aka School X, defendant.

Bruce Anthony Courtade, Law, Weathers & Richardson, Grand Rapids, MI, for Foundation for Interior Design Education Research, counter-defendant.

## ORDER AND PARTIAL JUDGMENT

QUIST, District Judge.

For the reasons stated in the Opinion issued today,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (docket no. 22) is **GRANTED.**

The following **Declaratory Judgment** is hereby entered in favor of the Plaintiff, Foundation for Interior Design Education Research ("FIDER"):

In acting to deny accreditation to the interior design program at Savannah College of Art and Design, Plaintiff

FIDER followed its own procedures; those procedures were fair and impartial; FIDER's decision was supported by substantial evidence in the record upon which the FIDER Board of Trustees acted; and FIDER did not otherwise act in an arbitrary, capricious or wrongful manner.

This case will continue.

## OPINION

Plaintiff, Foundation for Interior Design Education Research ("FIDER"), has sued Defendant, Savannah College of Art and Design ("Savannah College"), pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for a declaratory judgment that FIDER's decision to deny accreditation to Savannah College was in accordance with FIDER's own procedures, supported by substantial evidence, and not arbitrary or capricious. Savannah College has counterclaimed, alleging breach of contract, violation of common law due process, breach of fiduciary duty, antitrust violations under Michigan and federal law, and fraud arising out of FIDER's denial of accreditation. This matter is before the Court on FIDER's Motion for Summary Judgment, this Court's Order to Show Cause regarding federal subject matter jurisdiction, and Savannah College's motion at oral argument that this Court should exercise its discretion under the Declaratory Judgment Act and decline to entertain FIDER's declaratory judgment action.

### Facts

FIDER is a private organization which accredits interior design programs in the United States and Canada. FIDER only reviews interior design programs upon invitation of the program. A program's decision to seek accreditation by FIDER is voluntary.

In response to requests from its students and faculty, Savannah College decided to apply to FIDER for accreditation of its interior design program. Pursuant to FIDER's rules, FIDER sent a visiting team of interior design educators and practitioners to conduct an on-site evaluation of the program to determine compliance with FIDER's Standards and Guidelines. During the visit, the team met with members of Savannah College's administration, faculty members, students, and alumni. Additionally, the team inspected the facilities, evaluated course offerings, and reviewed a large amount of student work.

At the conclusion of the visit, the team members set forth their findings in a Visiting Team Report ("VTR"). The VTR included a summary of the visiting team's findings and a completed Site Visit Checklist, which identified twelve areas in which the team concluded that Savannah College did not meet FIDER's standards, including eleven findings of non-compliance with FIDER's Student Achievement Standards. Student Achievement Standards measure the awareness, understanding, and competency of students in the program seeking accreditation. See Standards and Guidelines at 2.9–2.9.3, Pl.'s Ex. A.) FIDER has consistently stated that these Student Achievement Standards are *the* significant factor in determining whether a program should be accredited. (*See id.* at 2.8; Trustee's Decision at 3, Pl.'s Ex. Q, Tab 6; Letter from Trogdon to Rowan, Aug. 25, 1997, Pl.'s Ex. L). The VTR also contained the visiting team's recommendation that Savannah College be denied accreditation.

In accordance with FIDER's procedures, Savannah College was given the opportunity to respond in writing to the VTR. The VTR and Savannah College's response were then sent to nine FIDER Accreditation Committee readers, three of whom made written comments about Savannah College's application. Two of the readers expressed concerns with the VTR's recommendation of denial of accreditation. The FIDER Board of Trustees (the "Trustees") then reviewed the VTR, Savannah College's response, and the com-

ments of the Accreditation Committee readers. The Trustees found that Savannah College had satisfied one of the Student Achievement Standards cited by the visiting team as being out of compliance, but otherwise retained the findings of the VTR and denied Savannah College accreditation. The letter from FIDER denying accreditation "encourage[d] the program to act on FIDER's recommendations and to apply again at the appropriate time." (Letter to Rowan from Ledingham of 9/1/95, Pl.'s Ex. F.) The letter also noted that Savannah College could reapply for accreditation in nine months and had the right to appeal the Trustees' decision pursuant to FIDER's rules.

Savannah College appealed the Trustees' decision to FIDER's Board of Appeals on October 12, 1995. The Board of Appeals found that "the Visiting Team failed to properly substantiate or document its findings that student work did not meet required minimum achievement levels." (Trustees' Decision at 1, Pl.'s Ex. Q, Tab 6.) However, the Board of Appeals "did not agree with [Savannah College's] assertion that the Program met its burden of demonstrating compliance with these Standards or that the Visiting Team failed to follow FIDER procedures." (*Id.* at 2.) The Board of Appeals also emphasized that "non-compliance with any number of the student achievement Standards is sufficient, by itself, to justify a denial of accreditation." (*Id.* at 3.) The Board of Appeals then remanded the issue to the Board of Trustees, which under FIDER rules makes "the final decision regarding accreditation status." (Standards and Guidelines at 1.9.7, Pl.'s Ex. A.)

The Trustees considered the Board of Appeal's decision and decided that, because of the visiting team's failure to properly substantiate its findings, an additional site visit would be necessary to determine whether Savannah College had in fact met FIDER's standards. The Trustees agreed to limit the scope of the second visit to: (1) the program philosophy Standards and Guidelines found to be out of compliance by the first visiting team; and (2) all of the Student Achievement Standards. FIDER also agreed to pay for the second visit. After months of letter writing between FIDER and Savannah College debating the need for a second visit and the scope of the second visit, FIDER sent a second visiting team to Savannah College to conduct an on-site visit on December 13–15, 1996.

The second visiting team was not provided a copy of the first VTR and was composed of individuals who did not participate in the first visit. The second VTR was even more critical than the first VTR, finding that Savannah College had failed to satisfy twenty Student Achievement Standards, and once again recommended denial of accreditation. The FIDER office then combined the findings of the first VTR with the second VTR to produce a comprehensive report setting forth the findings of both teams. Savannah College received a copy of the combined VTR and offered its comments to FIDER. Five FIDER Accreditation Committee readers reviewed the combined VTR and Savannah College's comments and unanimously recommended denial of accreditation. On August 25, 1997, the Board of Trustees voted to deny Savannah College accreditation.

Savannah College again appealed the denial to FIDER's Board of Appeals. Savannah College, believing it was a victim of disparate treatment, requested that FIDER release all accreditation reports from 1994 to the present for other interior design programs FIDER had approved for accreditation. The Trustees refused to release this information, stating that producing the requested documents would violate confidentiality obligations owed to the programs in question under FIDER's rules and noting that the documents demanded by Savannah College were not part of the record upon which the Trustees acted in denying Savannah College accreditation. The Board of Appeals upheld the Trustees' denial of accreditation to Savannah College

on April 22, 1998, finding that the Trustees' decision was not arbitrary, capricious, or otherwise in substantial disregard of the criteria or procedures of FIDER and that the Trustees' decision was supported by substantial evidence in the record. Immediately after notifying Savannah College of the Board of Appeals' decision, FIDER filed this action for declaratory judgment.

### Motion standards

### A. Summary judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *See id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *See id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *See id.* at 251, 106 S.Ct. at 2511 (citing *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). The summary judgment standard mirrors the standard for a directed verdict. *See id.* at 250, 106 S.Ct. at 2511. The only difference between the two is procedural. *See id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *See id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case.

*See Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; see also Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir. 1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### B. Subject matter jurisdiction

██ As a court of limited jurisdiction, this Court must proceed with caution in deciding that it has subject matter jurisdiction. *See Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1252 (6th Cir.1996) (citing *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)). The federal courts have subject matter jurisdiction only to the extent it is granted by either the Constitution or act of Congress. *See id.* "Ordinarily, the party claiming subject matter jurisdiction bears the burden of proof." *Alef v. United States,* 990 F.Supp. 932, 933 (W.D.Mich. 1997).

### C. Denial of accreditation

██ "Federal courts have consistently limited their review of decisions of accrediting associations to whether the decisions were 'arbitrary and unreasonable' and whether they were supported by 'substantial evidence,'" a standard of review similar to those accorded the decisions of administrative agencies. *Wilfred Academy of Hair and Beauty Culture v. Southern Ass'n of Colleges and Sch.,* 957 F.2d 210, 214 (5th Cir.1992); *see also Medical Inst. of Minn. v. National Ass'n of Trade and*

*Technical Sch.,* 817 F.2d 1310, 1314 (8th Cir.1987). "There is probably no area of the law where deference is as necessary is it is when a court reviews the decision of an accreditation association...." *Transport Careers, Inc. v. National Home Study Council,* 646 F.Supp. 1474, 1482 (N.D.Ind. 1986). "Courts give accrediting associations such deference because of the professional judgment these associations must necessarily employ in making accreditation decisions." *Wilfred Academy,* 957 F.2d at 214. Courts have recognized that "[t]he standards of accreditation are not guides for the layman but for professionals in the field of education." *Parsons College v. North Cent. Ass'n of Colleges and Secondary Sch.,* 271 F.Supp. 65, 73 (N.D.Ill.1967) (mem.op.). "Consequently, courts are not free to conduct a de novo review or to substitute their judgment for the professional judgment of the educators involved in the accreditation process." *Wilfred Academy,* 957 F.2d at 214. As a result, "courts focus primarily on whether the accrediting body's internal rules provide a fair and impartial procedure and whether it has followed its rules in reaching its decision." *Id.*[1]

In applying this standard, courts have refused to consider claims that the school denied accreditation was treated different-

ly and more severely than other "similarly situated" schools. Such a claim would require "a determination by this court that [the accrediting body] was incorrect in its evaluation of [the school], which would take this court beyond the proper scope of review, which does not include de novo review of [the accrediting body's] evaluative decisions." *Transport Careers,* 646 F.Supp. at 1485 (citing *Marlboro Corp. v. Association of Indep. Colleges and Sch.,* 556 F.2d 78, 80 n. 2 (1st Cir.1977)). Instead, courts have reviewed denials of accreditation similarly to decisions of administrative agencies, limiting review to the record before the accrediting body at the time of its decision. *See Rockland Inst.,* 412 F.Supp. at 1019.

*Analysis*

## A. The Court will exercise its jurisdiction in this case.

### 1. The Court has subject matter jurisdiction.

 In determining whether the jurisdictional minimum amount-in-controversy under 28 U.S.C. § 1332 has been met, dismissal is justified only where it appears "to a legal certainty that the claim is really for less than the jurisdictional amount."

---

1. Contrary to Defendant's argument, this deferential standard of review applies regardless of whether the accrediting agency is subject to government control and oversight. Defendant is correct that the Higher Education Act provides certain guidelines and restrictions for judicial review of accreditation decisions made by associations approved by the Department of Education as gatekeepers of federal funds. *See* 20 U.S.C. § 1099b(a); *Chicago Sch. of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Sch. and Colleges,* 44 F.3d 447, 450 (7th Cir.1994). However, there are a wide range of cases which have accorded deferential review of accrediting association decisions regardless of whether the association is approved by the Department of Education and regardless of whether federal or state law applies. *See, e.g., Wilfred Academy,* 957 F.2d at 214; *Medical Inst. of Minn.,* 817 F.2d at 1314; *Peoria Sch. of Bus., Inc. v. Accrediting Council for Continuing Educ. and Training,* 805 F.Supp. 579, 583

(N.D.Ill.1992) (mem.op.); *Rockland Inst., Div. of Amistad Vocational Sch., Inc. v. Association of Indep. Colleges and Sch.,* 412 F.Supp. 1015, 1019 (C.D.Cal.1976) (mem.op.). Furthermore, the analogy to the *Chicago School* case is inappropriate because Savannah College clearly did not attempt to obtain FIDER accreditation in order to "unlock the federal treasury." *Chicago School,* 44 F.3d at 449.

In this dispute, the parties agree that Michigan law applies. Although the Michigan courts have not ruled specifically on an accreditation issue, the Eastern District of Michigan, applying Michigan law, has held that the decisions of private associations are reviewed under a deferential "arbitrary and capricious" standard similar to the cases cited *supra. See Dietz v. American Dental Ass'n,* 479 F.Supp. 554, 557 (E.D.Mich.1979). There is no reason to believe that Michigan would not follow the accreditation line of cases cited by the Court.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). In declaratory judgment actions, " 'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.' " *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95–2187, 1998 WL 393766, *1, 1998 U.S.App. LEXIS 12841 at *6 (6th Cir. June 12, 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir.1975)). Accordingly, the amount-in-controversy in a declaratory judgment action may be measured by "the pecuniary result to either party which that judgment would produce." *Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir.1964). The pecuniary value to either party that a declaratory judgment would produce in this case certainly exceeds the $75,000 amount-in-controversy requirement. The Court is persuaded that FIDER may be seriously harmed if declaratory judgment is not entered in its favor, as its ability to accredit other schools would be significantly affected and it would face potential lawsuits from other schools previously denied accreditation. Additionally, declaratory judgment in favor of FIDER would also likely lead to judgment in favor of FIDER on most, if not all, of Savannah College's counterclaims of over $1 million in this case. Therefore, the Court finds that it has subject matter jurisdiction in this case.

## 2. This case is ripe for adjudication.

■ The Court finds that the matter is ripe for adjudication. Savannah College stated that it would not "accept any final decision that does not include the term of accreditation" and that if accreditation was denied, "the College [would] seek immediate redress through the legal system to stay that denial, and [would] sue for all damages that FIDER has caused through its wrongful conduct." (Letter from Russell to Pelesh of 2/11/98, Pl.'s Br.Resp. Show Cause Order Ex. 4.) This created a "reasonable apprehension" in FIDER that the threatened lawsuit would transpire if FIDER denied Savannah College accreditation. *Hudson County News Co. v. Metro Assocs., Inc.*, 141 F.R.D. 386, 390 (D.Mass.1992). In any case, the fact that Savannah College filed a counterclaim alleging the very claims threatened in the letter removes any doubt of the ripeness of the controversy for adjudication. *See Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1051 (8th Cir.1996).

## 3. The Court will exercise its discretion to entertain this action.

■ Even if a justiciable controversy exists, the Court may exercise its sound discretion in determining whether to entertain or dismiss a case under the Declaratory Judgment Act pursuant to 28 U.S.C. § 2201(a). *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). In *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir.1984), the Sixth Circuit discussed the considerations that should guide a district court in determining whether a declaratory ruling is appropriate:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Id.* at 326 (quoting E. Borchard, *Declaratory Judgments* 299 (2d ed.1941)). The court listed five factors that should be considered in determining whether a declaratory judgment will yield these results:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal

relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would create friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.*

Several of these factors weigh in favor of the Court hearing this case. A declaratory judgment would completely settle the controversy between the parties, particularly now that Savannah College has asserted its counterclaims before this Court. Declaratory judgment would similarly clarify the legal relations in issue. The fact that Savannah College has not filed a complaint in state court means that there is no friction with state courts or a more effective alternate remedy, as dismissal by this Court would require a state court to start the case anew. Indeed, any complaint by Savannah College would have to be filed in federal court if it included the federal antitrust claims which are part of Savannah College's counterclaim before this Court.

Additionally, Savannah College waited until this stage in the litigation, approximately seven months after the complaint was filed and after briefing and oral argument on FIDER's motion for summary judgment, before moving this Court to exercise its discretion and refuse to hear FIDER's declaratory judgment action. The Court is prepared to rule on the merits of FIDER's motion. "[I]f this case were dismissed, the state court, duplicating the work already done in the federal court, would have to 'start from scratch.' Its resolution of this case would necessarily be significantly delayed." *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.,* 996 F.2d 774, 779 (5th Cir.1993). Judicial economy strongly favors this Court hearing this case. Therefore, the Court,

exercising its discretion, will hear FIDER's declaratory judgment claim.

**B. FIDER is entitled to summary judgment in its favor.**

A review of the record before FIDER demonstrates that: (1) FIDER followed its internal rules in reaching its decision; and (2) FIDER's decision was not "arbitrary or unreasonable" and was based on substantial evidence.

**1. FIDER properly followed its internal rules in reaching its decision.**

FIDER followed its standard procedure throughout the accreditation process. After each visiting team submitted its VTR, Savannah College was offered the opportunity to submit a written response to be considered by the Board of Trustees. Savannah College also was given the opportunity to appeal the Trustees' denial of accreditation to FIDER's Board of Appeals, which considered Savannah College's arguments and initially determined that the first VTR did not substantiate its findings. The Trustees made the final determination regarding accreditation, in accordance with FIDER's rules.

Savannah College argues that the second site visit was not in accordance with FIDER's procedures. While it is technically correct that FIDER's rules do not expressly provide for a second site visit, Savannah College's argument misses the point. The determination by the Board of Appeals that the first visiting team did not substantiate its findings required further fact-finding through a second visit by FIDER. The Board of Appeals expressly held that Savannah College had not demonstrated compliance with many of the Student Achievement Standards. FIDER was clearly doing Savannah College a favor by allowing a second visit as an alternative to simply denying Savannah College accreditation at this stage.

The Court defers to FIDER's interpretation of its own rules to allow a second visit. Accrediting procedures are guides

that, if construed by courts too strictly, would strip the accrediting bodies of the discretion they need to assess the unique circumstances presented by different schools. *See Medical Inst. of Minn.,* 817 F.2d at 1314; *Rockland Inst.,* 412 F.Supp. at 1018; *Parsons College,* 271 F.Supp. at 73. A holding that FIDER acted inconsistently with its rules by giving Savannah College a second chance would be contrary to the high degree of deference this court must give to the decisions of accrediting bodies. The Court finds that FIDER properly followed its procedures regarding Savannah College's application for accreditation.

**2. The denial of accreditation was not arbitrary or unreasonable and was supported by substantial evidence.**

■■ The decision by the Board of Trustees to deny accreditation is clearly supported by substantial evidence. The second visiting team identified twenty areas in which FIDER found that Savannah College failed to comply with the Student Achievement Standards. Seven of these findings overlapped with the findings of the first visiting team. Savannah College voiced disagreement only with the visiting team's findings on five of the twenty standards the second VTR found were not complied with. (*See* Letter from Van Baron to Dunn of 4/27/97, Pl.'s Ex. Q, Tab 26.) FIDER's Accreditation Manual considers Student Achievement Standards "the factor of greatest significance in the evaluation process." (Accreditation Manual at 63, Pl.'s Ex. B.) The Board of Appeals consistently emphasized to Savannah College that "non-compliance with any number of the student achievement Standards is sufficient, by itself, to justify a denial of accreditation." (Board of Appeals Decision at 3, Pl.'s Ex. Q, Tab 6.) The Court refuses to substitute its judgment for that of the educators making up FIDER's Board of Trustees who voted on two separate occasions to deny Savannah College's application for accreditation.

**3. Savannah College has not made an adequate showing of bias required to permit discovery beyond the record before the Court.**

■■■ Generally, the review of an accrediting body's decision is limited to the record that was before the accrediting body at the time it made its decision. *See Philadelphia Wireless Technical Inst. v. Accrediting Comm'n of Career Sch. and Colleges of Tech.,* No. CIV.A. 98–2843, 1998 WL 744101, at *9 (E.D.Pa. Oct. 23, 1998) (mem.op.) ("[t]he Court's review of the Commission's decision in this case is limited to examining the record compiled before the Commission"); *Rockland Inst.,* 412 F.Supp. at 1019. A party may seek discovery outside of the record if it makes a " 'strong showing of bad faith or improper behavior' in order for [the] Court to consider Plaintiff's proffered evidence of the Commission's bias against [Plaintiff]." *Philadelphia Wireless,* 1998 WL 744101, at *10 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (noting that "such inquiry into the mental processes of administrative decisionmakers is usually to be avoided," thus the requirement of "a strong showing of bad faith or improper behavior before such inquiry may be made")). "[A] 'speculative possibility' that the [accrediting body] act[ed] 'not because [it] was persuaded by the evidence, but for some improper reason, fails to overcome the strong presumption of regularity.' " *Philadelphia Wireless,* 1998 WL 744101, at *10 (quoting *Hercules, Inc. v. EPA,* 598 F.2d 91, 123 (D.C.Cir. 1978) (citing *Overton Park* )). Additionally, the party must have raised the allegation of bias before the accrediting body's appeals panel in order for the allegation of bias to be considered by the Court. *See Philadelphia Wireless,* 1998 WL 744101, at *9.

Savannah College claims that FIDER has demonstrated its bias in four ways: (1)

it did not follow the recommendation of the two readers who questioned the first visiting team's report; (2) it ignored the Board of Appeals' initial ruling when it ordered a second site visit; (3) it looked at all of the Student Achievement Standards on its second site visit, rather than only those standards that were held not to be in compliance in the first visiting team's report; and (4) it accredited other schools that had problems with its Student Achievement Standards similar to Savannah College.

■ As to Plaintiff's first allegation of bias, the Board of Trustees decision to deny accreditation despite the concerns of two readers can be easily explained by the visiting team's report, which found noncompliance with eleven of the critical Student Achievement Standards. It was reasonable for the Board of Trustees to reach a decision that was in compliance with the visiting team's report and recommendation.

Plaintiff's second allegation of bias is similarly without merit. The FIDER Board of Trustees did not ignore the Board of Appeals' ruling when it ordered a second site visit. Rather, the Trustees considered the Board of Appeals' finding that "the Visiting Team failed to properly substantiate or document its findings" and that it "did not agree with [Savannah College's] assertion that the Program met its burden of demonstrating compliance with these [Student Achievement] Standards or that the Visiting Team failed to follow FIDER procedures." (Board of Appeals Decision at 1–2, Pl.'s Ex. Q, Tab 6.) A second site visit made perfect sense, as the record created by the first visiting team was simply too incomplete for FIDER to make a decision on Savannah College's application for accreditation. An accrediting body must be given significant leeway in interpreting its own rules. See Medical Inst. of Minn., 817 F.2d at 1314; Rockland Inst., 412 F.Supp. at 1018; Parsons College, 271 F.Supp. at 73. in fact, FIDER even paid all of the expenses for the second site visit. Therefore, the decision to

conduct a second site visit does not demonstrate any bias by FIDER.

Plaintiff's third allegation of bias is that FIDER decided to look at all of the Student Achievement Standards during the second site visit, rather than only those Standards that were found to not be in compliance on the first visit. The decision to re-examine all of the Student Achievement Standards during the second site visit complied with the Board of Appeals' finding that the first visiting team failed to create an adequate record to either affirm or deny Savannah College's application for accreditation. Furthermore, FIDER has reasonably explained that the Student Achievement Standards must be reviewed as a whole, as the Standards are interrelated in nature and it is important to evaluate the knowledge and skills of Savannah College's students in context rather than piecemeal. (See Letter from Dunn to Van Baron of 8/30/96, Pl.'s Ex. Q, Tab 17; Letter from Dunn to Rowan of 10/4/96, Pl.'s Ex. Q, Tab 20.) Accordingly, FIDER's decision to review the Student Achievement Standards as a whole does not raise any inference of bias by FIDER.

Savannah College's final argument is that it is the victim of disparate treatment when compared with other schools granted accreditation despite not complying with all of the Student Achievement Standards. However, as noted earlier, courts have refused to consider claims of disparate treatment in accreditation decisions, as determining whether a school was the victim of disparate treatment would require "a determination by this court that [the accrediting body] was incorrect in its evaluation of [the school], which would take this court beyond the proper scope of review, which does not include de novo review of [the accrediting body's] evaluative decisions." Transport Careers, 646 F.Supp. at 1485 (citing Marlboro Corp. v. Association of Indep. Colleges and Sch., 556 F.2d 78, 80 n. 2 (1st Cir.1977)). Because this Court will not consider Savannah College's disparate treatment argument on the merits, it

cannot find bias as a result of disparate treatment.

These allegations of bias, even if aggregated together, do not demonstrate a "strong showing of bad faith or improper behavior." At best, they raise the "speculative possibility" that FIDER acted for an improper reason. Because Savannah College has not made an adequate showing of bias, additional discovery will not be permitted.

*Conclusion*

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be granted.

An Order and Judgment consistent with this Opinion will be entered.