## FOUNDATION FOR INTERIOR DESIGN EDUCATION RE-SEARCH, Plaintiff,

v.

## SAVANNAH COLLEGE OF ART AND DESIGN, Defendant.

### No. 1:98–CV–346.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 3, 1999.

Douglas W. Van Essen, Bruce Anthony Courtade, Law, Weathers & Richardson, Grand Rapids, MI, for Foundation for Interior Design Education Research, plaintiff.

David L. Harrison, Tolley, Vanden-Bosch, Walton, Korolewicz, et al, Grand Rapids, MI, for Savannah College of Art and Design, defendant.

## OPINION

QUIST, District Judge.

Plaintiff, Foundation for Interior Design Education Research ("FIDER"), has sued Defendant, Savannah College of Art and Design ("Savannah College"), pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for a declaratory judgment that FIDER's decision to deny accreditation to Savannah College was in accordance with FIDER's own procedures, supported by substantial evidence, and not arbitrary or capricious. In an Opinion and Order dated December 21, 1998, this Court entered a declaratory judgment in favor of FIDER. *See Foundation for Interior Design Educ. Research v. Savannah College of Art and Design,* 39 F.Supp.2d 889, 890–91 (W.D.Mich.1998) (hereinafter *"FIDER"*).

Savannah College has brought counterclaims against FIDER, alleging breach of contract, violation of common law due process, breach of fiduciary duty, antitrust violations under Michigan and federal law, and fraud arising out of FIDER's denial of accreditation. This matter is before the Court on FIDER's Motion to Dismiss Counterclaims.

### Facts

The Court adopts the statement of facts from its previous opinion. *See FIDER,* 39 F.Supp.2d at 891–93. The Court also reiterates that it has held that:

> In acting to deny accreditation to the interior design program at Savannah College of Art and Design, Plaintiff FIDER followed its own procedures; those procedures were fair and impartial; FIDER's decision was supported by substantial evidence in the record upon which the FIDER Board of Trustees acted; and FIDER did not otherwise act in an arbitrary, capricious, or wrongful manner.

*Id.* at 890–91.

### Standard

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, the complaint must contain more than bare assertions of legal conclusions. *See Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993). The court must presume all factual allegations in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. *See* 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[1][b] (3d ed.1997). The court need not, however, accept unwarranted factual inferences. *See Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Dismissal is also proper if the complaint fails to allege an element necessary for relief or "when a successful affirmative defense or other bar to relief appears on the face of the complaint, such as the absolute immunity of a defendant...." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶¶ 12.34[4][a], [b] (3d ed.1997).

In practice, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."

*Allard*, 991 F.2d at 1240 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

The standard for dismissal was summarized recently in *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53 (1st Cir.1999), an antitrust case, which states:

> The governing precept ... is that while the plaintiff's "facts" must be accepted as alleged, this does not automatically extend to "[b]ald assertions, subjective characterizations, and legal conclusions ... The factual allegations must be specific enough to justify 'drag[ging] a defendant past the pleading threshold.'"

*DM Research*, 170 F.3d at 55 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988)) (citation omitted) (alterations in original).

*Analysis*

## I. Common law counterclaims

■ Savannah College alleges five common law counterclaims: (1) breach of contract; (2) violation of common law procedural due process; (3) violation of common law substantive due process; (4) breach of fiduciary duty; and (5) fraud. Courts that have considered common law claims as part of a dispute over denial of accreditation have uniformly held that decisions by accrediting bodies should be analyzed as administrative decisions rather than as traditional common law claims. For example, in *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 44 F.3d 447 (7th Cir.1994), a case cited in this Court's Opinion of December 21, 1998, the plaintiff, Chicago School of Automatic Transmissions, argued that the denial of accreditation by defendant was a breach of contract under Illinois law. However, the Seventh Circuit rejected the application of state law, noting that "accrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches." *Chicago School*, 44 F.3d at 449. The Seventh Circuit instead concluded, after citing many of the decisions cited by this Court in its Opinion of December 21, 1998, "that principles of federal administrative law supply the right perspective for review of accrediting agencies' decisions." *Id.* at 450 (noting that "administrative law entails deferential review, while courts applying contract law do not defer to either of the contracting parties' views").

A similar conclusion was reached in *Dietz v. American Dental Association*, 479 F.Supp. 554 (E.D.Mich.1979), another case cited in this Court's opinion of December 21, 1998. In *Dietz*, the plaintiff sued for breach of fiduciary duty and violation of the American Dental Association's constitution and by-laws. The court concluded that plaintiff could only maintain a claim under these common law causes of action if the decision by the association was "arbitrary, capricious, or discriminatory." *Dietz*, 479 F.Supp. at 557.

A third case cited in this Court's prior Opinion, *Transport Careers, Inc. v. National Home Study Council*, 646 F.Supp. 1474 (N.D.Ind.1986), also supports this conclusion. The plaintiff in *Transport Careers* alleged violations of common law procedural due process, common law substantive due process, disparate treatment, and breach of fiduciary duty. The court applied the deferential standard for review of the decisions of accrediting bodies to each of plaintiff's common law claims, concluding that summary judgment in favor of defendant was appropriate because the accrediting body followed its own rules and its decision to terminate plaintiff's accreditation was supported by substantial evidence. *See Transport Careers*, 646 F.Supp. at 1486.

Savannah College's counsel essentially admitted at oral argument that each of the college's common law counterclaims, ex-

cept for its fraud claim, is precluded by this Court's prior determination that FIDER followed its own procedures in denying Savannah College accreditation, that those procedures were fair and impartial, that FIDER's decision was supported by substantial evidence in the record, and that FIDER did not otherwise act in an arbitrary, capricious, or wrongful manner. The Court concludes that allowing Savannah College to proceed with these counterclaims would sanction form over substance, allowing artful pleading to avoid the deferential standard of review uniformly applied to the review of accreditation decisions. Accordingly, Savannah College's breach of contract, breach of fiduciary duty, violation of common law procedural due process, and violation of common law substantive due process claims will be dismissed.

Savannah College argues that its fraud claim must be treated differently from these other common law counterclaims for two reasons: (1) in order to state a fraud claim, Savannah College must meet the heightened pleading requirements of Fed. R.Civ.P. 9(b), which provides adequate protection for FIDER and distinguishes the fraud claim from the other common law claims; and (2) none of the cases applying the deferential standard of review to common law claims arising out of a denial of accreditation have involved a fraud claim. The Court is not persuaded that the enhanced pleading requirement for a fraud claim offers any basis for treating the fraud claim differently from Savannah College's other common law claims, considering that the cases are clear "that principles of federal administrative law supply the right perspective for review of accrediting agencies' decisions." *Chicago School,* 44 F.3d at 450 (applying arbitrary or unreasonable test to all common law claims complaining of denial of accreditation).

The fact that the cases dealing with common law claims arising out of a denial of accreditation have not involved an allegation of fraud by the school denied accreditation does not lead to a different result in light of this Court's prior ruling. Savannah College's fraud claim essentially alleges that: (1) it was the victim of disparate treatment by FIDER, in that it was denied accreditation while other schools were granted accreditation despite noncompliance with several of the Student Achievement Standards; and (2) it did not receive a meaningful appeal when it filed its appeal with the FIDER Board of Appeals because the FIDER Board of Trustees made the final decision regarding Savannah College's accreditation. (*See* 1st Am.Countercl. ¶¶ 137–145.) However, the Court already concluded in its December 21, 1998, Opinion that FIDER cannot maintain a disparate treatment claim. *See FIDER,* 39 F.Supp.2d at 898–99. The Court also concluded that FIDER followed its own procedures in denying Savannah College accreditation, and that FIDER's procedures clearly indicate that the Board of Trustees, not the Board of Appeals, makes the final decision about accreditation. *See id.* at 892, 896–97. Accordingly, the Court concludes that Savannah College's fraud claim merely repackages its previous claim that accreditation was wrongfully denied in an attempt to avoid the deferential standard of review uniformly applied to the review of accreditation decisions. Therefore, Savannah College's fraud claim will also be dismissed.

## II. Antitrust counterclaim

Savannah College also alleges that FIDER has unreasonably restrained trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 [1], and the Michigan Antitrust Reform Act, M.C.L. § 445.772.[2] FID-

---

1. Savannah College was granted leave to file an Amended Counterclaim on June 15, 1999, after FIDER filed its motion to dismiss counterclaims, in order to correct any deficiencies in the pleading of its antitrust counterclaim.

2. The parties agree that claims of unreasonable restraint of trade under the Michigan Antitrust Reform Act are analyzed exactly the same as claims of unreasonable restraint of trade under Section 1 of the Sherman Act.

ER's arguments in support of dismissal of these claims are addressed below.

## A. Accreditation as "trade or commerce"

■ FIDER's initial argument is that the denial of accreditation in this case is not "trade or commerce" governed by the Sherman Act. FIDER relies heavily on *Marjorie Webster Junior College v. Middle States Association of Colleges and Secondary Schools, Inc.*, 432 F.2d 650 (D.C.Cir.1970), in support of its argument. The court in *Marjorie Webster* began by noting that "[d]espite the broad wording of the Sherman Act, it has long been settled that not every form of combination or conspiracy that restrains trade falls within its ambit." *Marjorie Webster*, 432 F.2d at 653.[3] The court then explained that:

> the proscriptions of the Sherman Act were "tailored ... for the business world," not for the noncommercial aspects of the liberal arts and the learned professions. In these contexts, an incidental restraint of trade, absent an intent or purpose to affect the commercial aspects of the profession, is not sufficient to warrant application of the antitrust laws.

*Id.* at 654 (footnotes omitted).

However, the court stopped short of granting accreditation decisions in the education field complete immunity under the Sherman Act, holding that "[i]t is possible to conceive of restrictions on eligibility for accreditation that could have little other than a commercial motive; and as such, antitrust policy would presumably be applicable." *Id.* at 654–55.[4] The court concluded that:

> Absent such motives, however, the process of accreditation is an activity distinct from the sphere of commerce; it

goes rather to the heart of the concept of education itself. We do not believe that Congress intended this concept to be molded by the policies underlying the Sherman Act.

*Id.* at 655.

Other courts have cited *Marjorie Webster* with approval, prompting the authors of a recent article to conclude that "decisions involving Sherman Act challenges against accrediting associations have been consistent with this deferential view of favoring the accrediting associations." Jeffrey C. Sun & Philip T.K. Daniel, *The Sherman Act Antitrust Provisions and Collegiate Action: Should There be a Continued Exception for the Business of the University?*, 25 J.C. & U.L. 451, 469 (1999) (citing *Marjorie Webster, Brandt v. American Bar Ass'n*, No. CIV.A 3:96–cv–2606D, 1997 WL 279762 (N.D.Tex. May 15, 1997) (mem.op.), and *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026 (3d Cir.1997)). In fact, Sun and Daniel suggested that this deference is similar to the "arbitrary or unreasonable" standard of review applied to direct review of accrediting decisions. *See id.* (citing two cases cited in this Court's previous opinion of December 21, 1998, *Wilfred Academy of Hair & Beauty Culture v. Southern Ass'n of Colleges & Schs.*, 957 F.2d 210, 214 (5th Cir.1992) and *Parsons College v. North Central Ass'n of Colleges & Secondary Schs.*, 271 F.Supp. 65, 72 (N.D.Ill.1967)).

Savannah College does not dispute the applicability of *Marjorie Webster*, but rather argues that it has met the exception in *Marjorie Webster* allowing antitrust scrutiny of accreditation decisions with "little other than a commercial motive" by alleging that FIDER applied its accredita-

---

*See. e.g., Blair v. Checker Cab Co.*, 219 Mich. App. 667, 674, 558 N.W.2d 439, 442 (1996).

**3.** The Sherman Act provides that "[e]very contract, combination ..., or conspiracy, in restraint of trade or commerce ... is hereby declared to be illegal." 15 U.S.C. § 1.

**4.** For example, the court noted that the Sherman Act would apply if accreditation was denied to an institution simply because it did not buy textbooks from an agreed-upon supplier who provided special discounts for association members. *See Marjorie Webster*, 432 F.2d at 655 n. 21.

tion standards in this case with a commercial motive, namely the commercial desire to insulate FIDER's members from competing with Savannah College in the recruitment of students and faculty and in obtaining grants, scholarships, endowments, and links to professional organizations that would arise from accreditation. (*See* 1st Am.Countercl. ¶¶ 80, 113, 115, 118.) Savannah College argues that resolution of FIDER's purpose, motive, and intent in applying its accreditation standards in this case is a question of fact that can only be considered after allowing discovery. *See Potters Med. Ctr. v. City Hosp. Ass'n,* 800 F.2d 568, 572, 581 (6th Cir.1986) (noting that "motive and intent play leading roles" when evaluating antitrust claims and that "discovery should proceed for further development of the facts").

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59 (2d Cir.1997), is helpful in resolving this issue. The plaintiffs alleged that Hamilton College violated the Sherman Act by changing its residential policy to require all of its students to live in college-owned facilities and to purchase college-sponsored meal plans. The plaintiffs alleged that this policy was adopted for the commercial purpose of raising revenues and forcing the fraternity houses out of business, allowing the college to purchase the fraternity houses at below-market prices. *See Hamilton College,* 128 F.3d at 66. The college moved to dismiss, arguing that its residential policy was not "trade or commerce" under the Sherman Act, but was adopted in response to evidence that fraternities were dominating social life at the college, which was leading the most talented of Hamilton's prospective female students to enroll elsewhere. *See id.* The plaintiffs alleged that the college's stated purpose for the new policy was a mere pretext designed to obscure the college's purely commercial purpose. *See id.*

The Second Circuit cited *Marjorie Webster* with approval in considering whether the college's residential policy was "trade or commerce" governed by the Sherman Act. However, the court also emphasized that *Marjorie Webster* held that an incidental restraint of trade resulting from an accreditation decision was not "trade or commerce" under the Sherman Act " 'absent an intent or purpose to affect the commercial aspects of the profession....' " *Id.* at 64 (quoting *Marjorie Webster,* 432 F.2d at 654); *see also United States v. Brown Univ.,* 5 F.3d 658, 667 (3d Cir.1993) (holding that the Sherman Act applies to the commercial aspects of higher education). The Second Circuit reversed the district court's dismissal of the complaint, concluding that "[i]n the procedural posture of this case, [plaintiffs'] allegations must be accepted as true." *Hamilton College,* 128 F.3d at 66. Accordingly, because the plaintiffs alleged that the policy was adopted for a commercial purpose, it was reversible error to dismiss the complaint on the basis that the conduct did not involve "trade or commerce" under the Sherman Act. *See id.*

The Court finds that Savannah College has made a sufficient allegation of commercial intent to avoid dismissal for failure to state a claim on this ground. Savannah College has alleged that it was denied accreditation by FIDER because FIDER members sought to diminish competition that FIDER members and their institutions face for recruiting students and faculty and acquiring grants. (*See* 1st Am.Countercl. ¶ 113). This is similar to the allegation of commercial purpose made by plaintiffs in *Hamilton College* and is sufficient to avoid dismissal. Accordingly, Plaintiff's motion to dismiss on this issue will be denied.

## B. Anticompetitive effect

■ FIDER's second argument is that Savannah College has failed to properly allege an anticompetitive effect on the market from FIDER's decision to deny accreditation to Savannah College. Anticompetitive effect on the market is necessary unless the action at issue is found to be a *per se* violation of the Sherman Act.

*See, e.g., Stratmore v. Goodbody,* 866 F.2d 189, 194 (6th Cir.1989).

 A *per se* analysis applies only to " 'agreements or actions which, because of their pernicious effect on competition and lack of any redeeming value, are conclusively presumed to be unreasonable and therefore illegal. . . .' " *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing, Inc.,* 472 U.S. 284, 289, 105 S.Ct. 2613, 2617, 86 L.Ed.2d 202 (1985) (quoting *Northern Pac. Ry. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958)). FIDER's denial of accreditation to Savannah College does not fall in the category of an action that categorically has a "pernicious effect on competition and lack of any redeeming value" such that a conclusive presumption that the actions violated the Sherman Act should apply. No case of which this Court is aware has ever held that denial of accreditation by any type of accrediting body is a *per se* violation of the Sherman Act. Accreditation has pro competitive effects ("redeeming value") in that it "enhance[s] competition and promotes efficiency by clarifying and informing choices that market actors must make." Clark C. Havighurst, *Accrediting and The Sherman Act,* 57–AUT L. & Contemp.Probs. 199, 200 (1994). "[C]ases demonstrate the existence of a general presumption that 'the public interest is served by the promotion of enhanced education and training requirements.' " Sun & Daniel, *supra,* at 476 (quoting *Sherman College of Straight Chiropractic v. American Chiropractic Ass'n, Inc.,* 654 F.Supp. 716, 722 (N.D.Ga. 1986)).

In this case, Savannah College has not alleged any refusal to deal nor any joint action of any kind against FIDER other than the refusal to grant accreditation. The parties agree that FIDER accreditation has substantial redeeming value. (*See* 8/12/99 Hr'g Tr. at 26–27.) The Court has already concluded that in this case "FIDER followed its own procedures; those procedures were fair and impartial; FIDER's decision was supported by substantial evidence in the record upon which the FIDER Board of Trustees acted; and FIDER did not otherwise act in an arbitrary, capricious, or wrongful manner." *FIDER,* 39 F.Supp.2d at 890–91.

 The denial of accreditation by FIDER is not the type of naked restraint on the market to which a *per se* analysis applies. Accordingly, the Court concludes that a rule of reason analysis is appropriate in this case.

### 1. Market power in a relevant market

 Because the rule of reason applies, in order to state a claim under section 1 of the Sherman Act, Savannah College must allege an injury to competition in the marketplace. *See, e.g., Valley Prods. Co. v. Landmark,* 128 F.3d 398, 406 (6th Cir.1997); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,* 917 F.2d 1413, 1422 (6th Cir.1990). This requires Savannah College to allege that FIDER has substantial market power in a particular market, as "[a] defendant must have market power before its conduct can be shown to have an adverse effect on competition." *Hand v. Central Transp., Inc.,* 779 F.2d 8, 11 (6th Cir.1985) (per curiam); *see also Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12, 26–29, 104 S.Ct. 1551, 1558, 1565–67, 80 L.Ed.2d 2 (1984) (requiring proof of market power and holding that proof of a 30 percent share of the market, standing alone, is an insufficient basis from which to infer market power); *PSI Repair Servs., Inc. v. Honeywell, Inc.,* 104 F.3d 811, 818 (6th Cir.1997) (stating that "[t]he market power requirement is important because, without market power, a seller cannot engage in the forcing necessary to establish a § 1 violation"); *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994) (stating that "[s]ubstantial market power is an essential ingredient of every antitrust case under the Rule of Reason").

"Unless an antitrust plaintiff alleges the existence of market power, the complaint may be dismissed for failure to state a claim upon which relief can be granted." *Health First, Inc. v. Bronson Methodist Hosp.*, No. 1:89–CV–1191, 1990 WL 157372, at *2 (W.D.Mich. Aug.20, 1990) (citing *Hand*). Market power "must be alleged in more than vague and conclusory terms to prevent the dismissal of the complaint on a defendant's Rule 12(b)(6) motion." *Id.* (citing *Crane & Shovel Sales Corp. v. Bucyrus–Erie Co.*, 854 F.2d 802, 805 (6th Cir.1988)). As part of its allegation that FIDER has market power, Savannah College must plead "the existence of relevant product and geographic markets in order to establish a Section 1 claim." *Id.* (citing *Davis–Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1195 (6th Cir.1982)); *see also Hand*, 779 F.2d at 11 (holding that "[d]etermining whether the defendants have market power ... can only be accomplished by first defining the relevant market"). Dismissal is appropriate if the definition of the relevant market in the complaint is "implausible" or "not tenable." *See B.V. Optische v. Hologic, Inc.*, 909 F.Supp. 162, 172 (S.D.N.Y.1995) (rejecting plaintiff's definition of the relevant market and dismissing the complaint because plaintiff failed to "offer an explanation" as to why the product market was defined "in such narrow terms"); *Staudinger v. Educational Comm'n for Foreign Med. Graduates*, No. 92 Civ. 8071, 1994 WL 410875, at *3 (S.D.N.Y. Aug.3, 1994) (dismissing complaint because relevant market was "not tenable"); *E. & G. Gabriel v. Gabriel Bros., Inc.*, No. 93 CIV. 0894, 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994) (dismissing plaintiff's complaint because alleged market was "implausible").

Savannah College has failed to plead that FIDER has substantial market power in a relevant market. Savannah College's counterclaim defines the market as "accredited interior design education programs in the United States." (1st Am.Countercl.¶ 74.) If the relevant market is *accredited* interior design education

programs, as opposed to interior design education programs generally, whether accredited or not, there is little question that FIDER had substantial market power, as it is the only organization that specifically accredits interior design education programs in the United States. (*See id.* ¶ 81.)

However, the Court concludes that the relevant market is not *accredited* interior design education programs and that the relevant market is interior design education programs generally. Savannah College's own pleadings and arguments are inconsistent with Savannah College's narrow definition of the relevant market and are consistent with the Court's conclusion.

The Supreme Court has indicated that the relevant market, for antitrust purposes, "is composed of products [or services] that have reasonable interchangeability for the purposes for which they are produced—price, use, and qualities considered." *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 404, 76 S.Ct. 994, 1012, 100 L.Ed. 1264 (1956); *see also American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 622–23 (6th Cir.1999) (noting that "[t]he relevant market includes those products or services that are reasonably interchangeable with, as well as identical to, defendant's product"). The question facing the Court in *duPont* was whether the relevant market was cellophane, of which duPont had a 75 percent share, or all flexible packaging material, of which duPont's share was less than twenty percent. The Court concluded that the relevant market was all flexible packaging materials, finding that "despite cellophane's advantages it has to meet competition from other materials in every one of its uses" and that "a very considerable degree of functional interchangeability exists between these products." *Id.* at 399, 76 S.Ct. at 1009. While not identical, the Court concluded that cellophane and other flexible packaging materials were "reasonably interchangeable by consumers for the same purposes" and were therefore

part of the same relevant market under the Sherman Act. *Id.* at 395, 76 S.Ct. at 1007.

Savannah College admitted at oral argument that it was competing with accredited schools for the same pool of students, faculty, and staff. (*See* 8/12/99 Hr'g Tr. at 29.) Savannah College suggested that it was "severely crippled" in its ability to compete because of perceived differences by students, faculty, and staff in the quality of accredited versus non-accredited interior design programs. (*Id.*) However, "[c]ourts have repeatedly rejected efforts to define markets by price variances or *product quality variances.* Such distinctions are meaningless where the differences are actually a spectrum of price and quality differences." *Haagen–Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc. (In re Super Premium Ice Cream Distribution Antitrust Litig.*), 691 F.Supp. 1262, 1268 (N.D.Cal.1988) (emphasis added) (rejecting attempt by plaintiff to define the relevant market as "premium ice creams," because "all grades of ice creams compete with one another for customer preference" and "the relevant market is ice cream generally"); *see also Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc.*, 889 F.2d 524, 528 (4th Cir.1989) (holding that "better branded" furniture is not a relevant market distinct from the furniture market generally). Thus while students, faculty, and staff may consider whether a school is FIDER-accredited in deciding whether to attend or work at that school, the contention that accredited interior design programs actually constitute a legally separate market from non-accredited interior design programs is "implausible" and "not tenable" in light of Savannah College's admission that it has been and is continuing to compete for the same pool of students, faculty, and staff.

Because Savannah College has not alleged that FIDER has substantial market power in the relevant market of interior design programs generally, its antitrust counterclaim must be dismissed.

## 2. Injury to competition

Savannah College has also failed to allege an injury to competition. Savannah College alleges that the denial of accreditation by FIDER has injured the marketplace by artificially reducing the number of educational choices for students, the number of teaching opportunities for professors, and the amount of competition for grants and scholarships, all resulting in a smaller output of qualified design school graduates. (*See* 1st Am.Countercl. ¶¶ 114–18.)

During oral argument, this Court opined that *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247 (7th Cir.1994) seemed to be the case most analogous to the instant case. In an opinion written by a former professor of antitrust law, Frank H. Easterbrook, the Seventh Circuit held that the American Board of Psychiatry and Neurology's decision to deny certification to two doctors could not, as a matter of law, "amount to an exercise of market power, which entails cutting back output in the market and thus driving up prices to consumers." *Sanjuan*, 40 F.3d at 251. The Seventh Circuit noted that the doctors "already are sellers in the market for psychiatric services; turning down their applications for certification does not remove their output from the market and therefore does not raise prices to consumers." *Id.* Similarly, Savannah College or any other school is free to offer an interior design program without FIDER accreditation. In fact, Savannah College had a growing interior design program for many years prior to its voluntary decision to apply for FIDER accreditation. With refreshing candor, Savannah College's lawyer acknowledged during oral argument that if this District Court were to follow the Seventh Circuit's decision in *Sanjuan*, this Court would have to grant FIDER's motion to dismiss. (*See* 8/12/99 Hr'g Tr. at 32.)

In essence, the injuries alleged by Savannah College are all injuries that result from the stigma and loss of prestige alleg-

edly suffered by Savannah College because of the denial of accreditation by FIDER. According to Savannah College, some students, teachers, and business organizations choose not to attend, work for, or donate money to Savannah College because of the denial of accreditation by FIDER.

■ It is well settled that stigma or loss of prestige to an entity that is denied accreditation or certification of its service or product does *not* constitute an injury to competition under the Sherman Act. For example, in *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 107 F.3d 1026 (3d Cir.1997), the plaintiff law school was denied accreditation as an approved law school by the ABA. In granting summary judgment in favor of the defendant, the Third Circuit held that "[a] loss of prestige resulting from a refusal to approve a product or service does not alone make out an antitrust claim." *Massachusetts School of Law*, 107 F.3d at 1037–38.

In *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 846 F.2d 284 (5th Cir.1988), the defendant trade association delayed its decision whether or not to certify plaintiff's product for almost three years. Plaintiff alleged a conspiracy under the Sherman Act by the members of the trade association, several of whom were competitors of plaintiff. The Fifth Circuit held that even if product certification "is very important to buyer acceptance," denial of certification by a trade association does not constitute an injury to competition unless there is proof that "customers were coerced ... or otherwise constrained to buy only [certified] products." *Consolidated Metal Prods.*, 846 F.2d at 295–96.

*Zavaletta v. American Bar Association*, 721 F.Supp. 96 (E.D.Va.1989) (mem.op.) held that the ABA's denial of accreditation to certain schools did not have any anticompetitive effect under the Sherman Act. The Court held that, other than stigma and loss of prestige suffered by an individual law school resulting from a denial of accreditation, the only effects in the market were caused by the independent decisions by many states to adopt the ABA accreditation list as their own. The stigma and loss of prestige suffered by the law school was insufficient as a matter of law to constitute injury to competition. *See Zavaletta*, 721 F.Supp. at 98.

In *Schachar v. American Academy of Ophthalmology, Inc.*, 870 F.2d 397 (7th Cir.1989), another case authored by Judge Easterbrook, the plaintiffs alleged that an American Academy of Ophthalmology press release characterizing radial keratotomy surgery for myopia as "experimental" violated section 1 of the Sherman Act. The plaintiffs argued that the press release was issued to restrain the ability of ophthalmologists to perform this surgery. In holding that there was no injury to competition under the Sherman Act, Judge Easterbrook cited *Consolidated Metal Products* with approval for the proposition that "when a trade association provides information ( [or] gives a seal of approval) but does not constrain others to follow its recommendations, it does not violate the antitrust laws." *Schachar*, 870 F.2d at 399. The court went on to note that although the press release almost certainly had some effect on the demand for this surgery, the press release merely "appeal[ed] to consumers' (and third-party payors') better judgment" and that "the plaintiffs had no entitlement to consumers' favor." *Id.* at 400. The court explained that "[i]f such statements should be false or misleading or incomplete or just plain mistaken, the remedy is not antitrust litigation but more speech—the marketplace of ideas." *Id.*

These cases are analogous to the instant case. In this case, the effects on the market alleged by Savannah College would be caused by the voluntary decision of students, teachers, or business organizations not to do business with Savannah College because it was denied FIDER accreditation. Even without FIDER accreditation, Savannah College is free to continue to offer an interior design program, and has

done so. There has been no restriction of output.

Savannah College relies on two cases, *Full Draw Productions v. Easton Sports, Inc.*, 182 F.3d 745 (10th Cir.1999), and *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524 (3d Cir.1990), for the proposition that an injury to a particular competitor can constitute injury to competition for the purpose of stating a claim under Section 1 of the Sherman Act. However, to the extent these cases arguably stand for the proposition asserted by Savannah College, both cases are distinguishable. *Full Draw* involved a *per se* violation for which proof of adverse effect on competition and substantial market power are not required, and is therefore not applicable to this case, which involves rule of reason analysis. *See Full Draw*, 182 F.3d 745, 750–51. *Feeser* involved a price discrimination claim under section 2 of the Clayton Act and is therefore wholly inapplicable to Savannah College's claim under section 1 of the Sherman Act. *See Feeser*, 909 F.2d at 1532–33.

■■■ "It is axiomatic that the antitrust laws were passed for 'the protection of competition, not competitors' " and that an injury suffered only by the antitrust plaintiff is insufficient as a matter of law to prove anticompetitive effect in the market. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224, 113 S.Ct. 2578, 2588–89, 125 L.Ed.2d 168 (1993) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)); *see also Langenderfer*, 917 F.2d at 1422, 1431 (same); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 812 (9th Cir.1988) (holding that an injury to an antitrust plaintiff alone is not sufficient to prove injury to competition).

Savannah College has failed to allege injury to anyone or anything other than itself. Therefore, Savannah College has failed to allege an anticompetitive effect of the denial of accreditation necessary to avoid dismissal.

### 3. Further Discovery and Amendment of Complaint

This Court seriously considered allowing Savannah College some discovery to establish a relevant market and anticompetitive effect. When this Court asked the College's lawyer what discovery the College would need in order have to show a relevant market and injury to competition, counsel's answer had nothing to do with showing the market or injury to competition. Rather, the College's lawyer requested, once again, discovery to show that the College was not treated fairly in comparison with other schools that had applied for accreditation. In counsel's words, although the standards are not challenged on their face, "the fix was in." (8/12/99 Hr'g Tr. at 27.) The "fix was in" argument was disposed of by this Court in its prior decision. Furthermore, as Judge Easterbrook said in *Schachar*, even if FIDER was wrong in denying Savannah College accreditation, "the remedy is not antitrust litigation but more speech—the marketplace of ideas." *Schachar* at 400.

This Court does not believe that further discovery or further amendment of Savannah College's Counterclaim will enable Savannah College to submit a legitimate claim under the antitrust laws. Accordingly, the Court will dismiss Savannah College's antitrust counterclaim with prejudice.[5]

### *Conclusion*

For the foregoing reasons, Plaintiff's motion to dismiss counterclaims will be granted.

---

5. The Court, therefore, does not reach FID-ER's third argument that Savannah College

has not alleged concerted action by the member schools that are part of FIDER.